UNITED STATES DISTRICT COURT

Central District of California

FILED

CLERK, U.S. DISTRICT COURT

09/29/2025

CENTRAL DISTRICT OF CALIFORNIA

BY_____GSA_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

| | | |
|---|---|---|
| APRIL CHANDLER. | ) | Case No. 2:25-cv-08210 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| -against- | ) | |
| | ) | **MOTION FOR** |
| | ) | **DEFAULT JUDGMENT** |
| | ) | |
| | ) | |
| MARK SKIPPER AKA SKIP ARCHIMEDES, | ) | |
| MICHAEL MALOY, EMPIRICAL MEDIA. | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND**

**INCORPORATED MEMORANDUM OF LAW**

Plaintiff APRIL CHANDLER (herein, "Plaintiff" moves for entry of Default Judgment against MARK SKIPPER aka SKIP ARCHIMEDES, an individual (herein, "Defendant"). Plaintiff states in support of it's Amended Complaint, **ECF 14,** Second Amended Complaint, **ECF 99**, and his default having been entered, **ECF 118**, of its motion as follows;

**I.        Introduction**

The Defendant has infringed upon the Plaintiff's copyright, creativity, originality, and fixation concerning the raw footage and film "Quest For Youth". This infringement included a campaign

1

aimed at harassing the Plaintiff, which involved sharing a derogatory website full of falsehoods ending in .info with the Plaintiff's sales agent and distributor, Big Media. As a result, the Plaintiff's film was removed from international distribution, directly impacting the Plaintiff's financial standing.

Additionally, the Defendant's involvement in this conspiracy with Michael Maloy to appropriate and violate the Plaintiff's creativity, originality, and raw footage has caused emotional, physical, and mental harm to the Plaintiff, significantly damaging her reputation, which remains difficult to restore.

The Plaintiff's sole recourse against the Defendant is through civil action. The Norfolk Police in the United Kingdom, where the Defendant resides, advised the Plaintiff to pursue relief in civil court due to the criminal complexities arising from the Plaintiff's residence in New York State and the Defendant's status as a citizen of Norfolk, United Kingdom. Therefore, the United States District Court is the appropriate venue for the Plaintiff to seek a permanent injunction against the Defendant to prevent further copyright infringement, as outlined in her second amended complaint, **ECF 99**.

The Plaintiff, who owns a valid copyright in her work registered with the United States Copyright Office, alleges that the Defendant has engaged in multiple violations, including direct copyright infringement through unauthorized public performance and reproduction of her work, thereby demonstrating both access and lack of permission. Furthermore, the Defendant is accused of inducing copyright infringement by knowingly encouraging others to infringe on the Plaintiff's rights, as well as contributing to the infringement by facilitating such actions while being aware of their illegal nature. The Defendant's vicarious copyright infringement is evidenced by his ability to control the infringing activities and his financial benefit from them. Additionally, the Defendant's actions constitute conversion, as he has unlawfully taken and used the Plaintiff's work without authorization, depriving her of its use. Finally, the Plaintiff asserts

that the Defendant's conduct amounts to piracy under international law due to his unauthorized reproduction and distribution of her copyrighted material, thus violating her rights on multiple levels.

The Defendant has identified his residence as 47 Archdale Close, Kings Lynn, Norfolk, PE330QG, United Kingdom, in his response to the Plaintiff's takedown request for copyright violation on YouTube concerning the raw footage and film "Quest For Youth." By doing so, he has consented to the jurisdiction of the Federal District Court and agreed to accept service of process from the Plaintiff.

## II.      Procedural Posture

In this action, Plaintiff alleges that the Defendant has infringed on Plaintiff's copyright, harassed and harmed her and filed suit for the following causes of action: (i) Direct Copyright Infringement - Public Performance; (ii) Direct Copyright Infringement - Reproduction; (iii) Inducement of Copyright Infringement; (iv) Contributory Copyright Infringement; (v) Vicarious Copyright Infringement; (vi) Conversion; (vii) Piracy Under Law of Nations.

Plaintiff's Summons issued on February 13th, 2024, **ECF 3**, Amended Complaint filed in this action on March 10th, 2024, **ECF 14**, and Second Amended Complaint filed on June 28th, 2024, **ECF 99**.

Plaintiff served Defendant with a summons and a copy of Plaintiff's Amended Complaint pursuant to CPLR Section 308, on March 20th, 2024 and again on July 18th, 2024. See Affidavit of Service entered on April 3rd, 2024, **ECF 30** and July 29th, 2024, **ECF 112**. Defendant has failed to appear in this action and no extensions of time has been granted. As a result of Defendant's failure to appear in this action, Defendant is in default. Accordingly, on August 9th, 2024, Plaintiff filed a request to Enter Default with the Clerk of the Court, **ECF 117**. On August 12th, 2024, the Clerk of the Court entered a default against Defendant, **ECF 118**.

Since that time, over thirteen months have passed without any response from the Defendant.

Based on Defendant's default, Plaintiff is entitled to Judgment by Default. Plaintiff is seeking monetary relief with the matter to be set down for an inquest to assess Plaintiff's damages, with a date to be determined by the Court. Accordingly, Plaintiff hereby requests that the Court enters Judgment against Defendant and in favor of Plaintiff and in the form of the Final Judgment, lodged concurrently herewith, awarding a permanent injunction in Plaintiff's favor, as prayed for in the Second Amended Complaint, enjoining Defendant from copyright infringement.

### III.    Memorandum of Law

**A.    Plaintiff's well-pleaded allegations set forth all facts necessary to establish Defendant's liability for all causes of action plead.**

Plaintiff served Defendant on March 20th, 2024, and Defendant has refused to respond or appear. Defendant is aware of and still refuses to participate in this action. Accordingly, the Clerk entered a default against Defendant. FED. R. CIV. P. 55.

On a motion for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court accepts as true the facts alleged in the complaint: "[B]y defaulting, the [defendant is] deemed to have 'admit[ted] the plaintiff's well-pleaded allegations of fact' for purposes of liability." Coton v. Televised Visual X-Ography, Inc., 740 F. Supp. 1299, 1307 (M.D. Fla. 2010) (quoting Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987)); Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. App'x 860, 863 (11th Cir. 2007); Shandong Airlines Co. v. CAPT, LLC, 650 F. Supp. 2d 1202, 1206 (M.D. Fla. 2009) (citing Buchanan). If the admitted facts establish the defaulting defendant's liability, the plaintiff is entitled to relief against that defendant. See Shandong Airlines, 650 F. Supp. 2d at 1206; United States v. Henley, Civ. No. 8:10-2208-T- 24-TGW, 2011 WL 1103894, at *2 (M.D. Fla. Mar. 25, 2011) (citing Tyco Fire).

Pursuant to Fed. R. Civ. P. 54(c), the relief awarded "must not differ in kind from, or exceed in amount, what is demanded in the [complaint]." See Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc., No. 10-12238, 2011 WL 311680, at *2 (11th Cir. 2011); Magee v. Maesbury Homes, Inc., Civ. No. 6:11-209-Orl-19DAB, 2011 WL 1457173, at *2 (M.D. Fla. Apr. 15, 2011); Enpat, Inc. v. Budnic, Civ. No. 6:11-86-PCF-KRS, 2011 WL 1196420, at *1 (M.D. Fla. Mar. 29, 2011).

Plaintiff's well-pleaded allegations set forth all facts necessary to establish its rights in the copyright infringement, as well as Defendant's liability for all causes of action plead, including        (i) Direct Copyright Infringement - Public Performance; (ii) Direct Copyright Infringement - Reproduction; (iii) Inducement of Copyright Infringement; (iv) Contributory Copyright Infringement; (v) Vicarious Copyright Infringement; (vi) Conversion; (vii) Piracy Under Law of Nations. Defendant, by failing to answer, has conceded the allegations stated in the Complaint. No dispute as to any material fact exists.

**B.     Plaintiff is Entitled to a Permanent Injunction.**

Plaintiff is seeking a permanent injunction enjoining Defendant from ever again infringing on her copyright, creativity, originality and fixation, raw footage and film "Quest For Youth". A plaintiff sufficiently demonstrates the need for a permanent injunction by showing: (1) irreparable harm; (2) that monetary damages alone are inadequate; (3) that the balance of hardships favors the plaintiff; and (4) that an injunction would benefit the public interest. eBay Inc. v. Merc Exchange, L.L.C., 547 U.S. 388, 391 (2006). These elements are satisfied here.

**1.     Plaintiff Faces Irreparable Harm.**

A permanent injunction is warranted when there exists a "cognizable danger of a recurrent violation" that exceeds a "mere possibility" (United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953)). The Defendant's conduct is not only egregious but also serves as the root cause

of the Plaintiff's significant and ongoing suffering, indicating a malicious intent to inflict harm. Given the Defendant's refusal to participate in this action, it is reasonable to anticipate that retaliation is more than a mere possibility. The Plaintiff cannot be assured that the Defendant will refrain from republishing or causing the republication of her film "Quest For Youth," nor that he will not utilize her raw footage or elements of her completed film, particularly considering the Defendant's belief that he is judgment proof while residing outside the United States. Therefore, the requested injunctive relief is essential to prevent any further harm to the Plaintiff.

This injunctive relief constitutes the only means to ensure that the Defendant does not inflict any future harm on the Plaintiff, making it a "necessary remedy" that is "proper in scope" (Sharpe v. Cureton, 319 F.3d 259, 273 (6th Cir. 2003)). Therefore, the injunction is the sole remedy available to the Plaintiff to prevent further injury. Additionally, a permanent injunction is an appropriate remedy in cases of default judgment (eBay, 547 U.S. at 391). The Plaintiff has adequately alleged and demonstrated relevant injury, illustrating with specific evidence how harm is currently being caused by the Defendant's conduct, rather than merely presuming that harm will occur.

## 2.    Inadequacy of Monetary Damages.

The Plaintiff asserts that monetary damages alone are inadequate to remedy the harm caused by the Defendant's copyright infringement. This inadequacy stems from the unique nature of the Plaintiff's creative work, which has intrinsic value that cannot be adequately quantified in financial terms. The ongoing infringement threatens not only the Plaintiff's current and future earnings, but also her reputation and artistic integrity, which are crucial to her career as a filmmaker. As such, financial compensation would fail to address the irreparable harm inflicted, leaving the Plaintiff without the means to protect her creative rights and the integrity of her work. Therefore, a permanent injunction is necessary to prevent further infringement and preserve the Plaintiff's ability to control her creative output.

3.      **The Balance of Hardships Favors Plaintiff.**

The Plaintiff's emotional distress and financial hardship will persist if the injunction is not granted. The severity of the harm to the Plaintiff is significant and realistically indefinite, while there is no indication that the Defendant would suffer any harm from the granting of injunctive relief. On the contrary, the injunction simply requests that the Defendant cease infringing on the Plaintiff's copyright, creativity, fixation, and originality, and behave in accordance with the standards of a civilized society.

4.      **Injunctive Relief Serves the Public Interest.**

There is a strong public interest in addressing the injuries resulting from copyright infringement. In this case, an injunction would safeguard the Plaintiff's rights to her copyright, creativity, originality, fixation, raw footage, and the film "Quest For Youth." It would also convey a clear message that such conduct is unacceptable, potentially deterring future harm to other female filmmakers. Without an injunction, the Defendant would effectively be rewarded for his actions and for disregarding the judicial process, which would undermine the public interest due to its detrimental precedential effect.

## IV. Conclusion

The Plaintiff has demonstrated that the Defendant engaged in an egregious campaign of harassment aimed at undermining her business, her film "Quest For Youth," and her financial stability. The Defendant intentionally inflicted harm on the Plaintiff, and his actions constitute copyright infringement. Since the initiation of this litigation, the Defendant has not contested any of these claims; rather, he has willfully disregarded the judicial process, violating this Court's rules. For these reasons and those previously stated, this Court should grant the Plaintiff's Motion in its entirety and enter a Default Final Judgment of Liability and Injunction against the Defendant. The Plaintiff also submits a proposed Final Judgment for the Court's consideration.

Respectfully submitted,

Dated: 09/29/2025

_____

April Chandler

Plaintiff

U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Jun 28 - 2024**

John M. Domurad, Clerk

UNITED STATES DISTRICT COURT

Northern District of New York

6th Judicial Division

| | | |
|---|---|---|
| _____ | ) | |
| APRIL CHANDLER. | ) | Case No.3:24 CV-206 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| -against- | ) | |
| | ) | SECOND AMENDED COMPLAINT |
| | ) | |
| MARK SKIPPER AKA SKIP ARCHIMEDES, | ) | |
| MICHAEL MALOY, THOMAS HARRISION, | ) | |
| DAVID GUC ET AL. | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

Plaintiff, April Chandler Pro se, as and for their Complaint against Defendants Mark Skipper aka Skip Archimedes, Michael Maloy, Thomas Harrison, David Guc, Vanguard Management, Empirical Media, Harrison Thomas Group (collectively, the "Defendants"), hereby alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is an action for willful copyright infringement. Plaintiff is the owner of the film Quest For Youth (the "film") previously called Fountain of Youth and holds U.S. Copyright Registration in connection therewith. The film is almost 2 hours long and contains at a minimum 90% of Plaintiff's raw footage, including A Roll interviews with experts herself and/or Frazer

1

Bailey conducted from around the world spanning years, and Plaintiff's B roll footage, along with her voice as narrator from the beginning of the film to the end. The additional 10% footage that is not Plaintiff's copyright is stock footage licensed from platforms that Defendant Michael Maloy did not create, but found to fill gaps while contracted to work with Plaintiff. The documentary film format is familiar to any viewer of documentary films: footage of actual events interspersed with studio-style interviews and narrative VoiceOver. What makes this film unique and original is:

(i) Plaintiff's raw footage of interviews with experts sharing their valuable insight into subject matters Plaintiff has been fascinated about her whole life and believes the answers from experts can help people reduce their stress, regulate their emotions, breath efficiently, move more, be happier, healthier and live longer.

(ii) Plaintiff's British accent for the narration, which she recorded herself directing the nuances and style of the narration alone from her home in New York, which she then sent to Defendant Michael Maloy to edit into the film.

2.      Plaintiff filed Copyright with the USCO on 8th February, 2024, accepted for filing on 12th February, 2024.

3.      Plaintiff filed her lawsuit against Defendants in the Northern District of New York on 12th February, 2024 after her Copyright was accepted for filing.

4.      Plaintiff was delayed receiving her Copyright Certificate due to a two month investigation by the USCO after Defendant Michael Maloy filed a fraudulent Copyright claim for Plaintiff's Film on the 14th January, 2024 infringing on Plaintiff's creativity, originality and fixation.

5.      Plaintiff owns the complete Chain of Title and all raw footage used within the Film.

6.      Defendants Michael Maloy and Empirical Media were a "work made for hire" editor on Plaintiff's Film.

7.     Plaintiff fired her management team, Defendants Vanguard, Thomas Harrison, David Guc in or around February, 2024 after they led her to believe they were protecting her and her interests, including her film, against one of their other client's Defendant Michael Maloy, confirming to Plaintiff in writing they were resolving, but did nothing, resulting in Defendants Michael Maloy and Mark Skipper aka Skip Archimedes contacting Plaintiff's sales agent Big Media and others in an attempt to steal her Film, creativity, originality and fixation for themselves.

8.     Defendants not only infringed on Plaintiff's copyright, but they created an unsustainable environment that was toxic, abusive, harassing, aggressive, hateful, intentionally inflicting emotional distress on Plaintiff by their unlawful bad acts and torts.

9.     Defendants contacted Plaintiff's sales agent "Big Media" with malicious falsehoods and exclusive websites set up about Plaintiff to destroy her reputation, credibility and livelihood, with evidence showing Defendants concocted their plan with a clear intention to harm Plaintiff with a conspiracy to steal Plaintiff's film and raw footage, creating unnecessary emotional, physical and financial distress, disrupting Plaintiff's business, damaging her reputation, creating financial instability for Plaintiff and her family, and to fraudulently receive payments for Plaintiff's copyright, creativity, originality and fixation.

10.     Plaintiff believes Defendants acted in this way due to her Gender and does not believe they would have committed the same unlawful criminal bad acts towards a male Filmmaker, therefore, discriminating against Plaintiff based on her gender.

11.     Defendants stalking, harassment, and abuse of Plaintiff constitutes a NY State crime, however, at this time due to citizenship diversity, Federal court is Plaintiff's only recourse for Justice and to protect her copyright, work, creativity, originality, fixation and her other current and future opportunities.

12.     Plaintiff attempted to resolve these matters and emailed Defendant Michael Maloy and

cc'd Defendant Thomas Harrison on January 9th, 2024 at 17:28 with viable options in order to resolve issues amicably. Defendant Michael Maloy ignored communication from Plaintiff and has never responded to Plaintiff's email as of today's date, instead a few days later on January 14th, 2024 Defendant Michael Maloy deceitfully filed Plaintiff's creativity, originality and fixation with the Copyright Office knowing his behavior was fraudulent, unprofessional and unethical, as a "Work Made For Hire" on Plaintiff's Film Quest For Youth in return for monetary gain, not in exchange for ownership of Plaintiff's creativity, originality and fixation, which includes, but not limited to, completed Film and Plaintiff's Raw Footage filmed by Plaintiff and/or Producer Frazer Bailey spanning years with cast interviewed for Film with each expert signing video releases willingly agreeing to their footage belonging to Plaintiff: *"I understand that all such recordings, in whatever medium, shall remain the property of April Chandler & the Production Company. I have read and fully understand the terms of this release."* Only Plaintiff has the legal right to use cast A and B roll footage for a film project.

13.     Plaintiff was completely cut off by Defendants after film was narrated by Plaintiff and she had directed the film to first cut with her raw footage and interviews, and an agreement was signed by Plaintiff with Big Media ready for Worldwide distribution.

14.     Defendants contacted Plaintiff's Sales Agent that Plaintiff didn't have authorization to sign the distribution agreement and stated they can make a better version without Plaintiff asking them to reach out to them cutting Plaintiff out of the loop attempting to sign a new agreement with Big Media without Plaintiff's involvement.

15.     Defendants also contacted Big Media and her business associates with exclusive websites with derogatory false information and distorted facts, and direct falsehoods that Plaintiff is a "blackmailer", a "con", a "thief", falsehoods, which are slanderous and libel statements resulting in Big Media pulling Plaintiff's film from their catalogue.

16.     Defendant Thomas Harrison emailed Plaintiff instructing her not to contact Defendant

Michael Maloy that both himself and Defendant David Guc would resolve this "misunderstanding" with Defendant Michael Maloy, who they represent as his Manager from their offices in New York and Los Angeles, stating to Plaintiff, he [Defendant Michael Maloy] was completely taken in by Skip [Defendant Mark Skipper aka Skip Archimedes] and believed Skip's and Greg's story, even though Defendant Michael Maloy received evidence to the contrary from Producer Frazer Bailey, who has worked with Plaintiff for years, confirmed by others too, with Plaintiff providing her Management team at Vanguard with cast video releases and other pertinent Chain of Title documentation, which is privileged and confidential, not in the public domain.

17.     When Plaintiff informed Defendants Thomas Harrison and David Guc that Defendants Michael Maloy and Mark Skipper aka Skip Archimedes had contacted her sales agents and they had pulled her film, they initially acted shocked, stating they would resolve, instead they acted cowardly, not managing the situation, went radio silent with their inaction and inability to manage their client giving Defendant Michael Maloy confidence and time to continue with his illegal actions and consequently submitted a fraudulent claim to the Copyright Office for Plaintiff's film project.

18.     Defendants claiming Plaintiff's film for themselves would result in significant sums, hundreds of thousands more than the 10% fee Defendants Vanguard, Thomas Harrison and David Guc would have received from Plaintiff. Their lack of business acumen, honesty and poor business practices led to Plaintiff firing Defendants Vanguard, David Guc and Thomas Harrison.

19.     Plaintiff contacted the Copyright Office to file to protect her work [1-13494149971] only to find Defendant Michael Maloy had already filed a Copyright application for her film Quest For Youth, fraudulently failing to disclose to the Copyright office that he was "work made for hire" on his application, which he filed during the period of time Defendant Thomas Harrison told Plaintiff to be patient and not take any action, that he would resolve and insisted Plaintiff

send over video releases and chain of title for the project, which Plaintiff did believing Defendants were working towards a resolution getting all paperwork in order ready for Plaintiff's film to be released.

20.     During the period between November 2023 and February 2024 when Plaintiff was told by Defendant Thomas Harrison not to take any action and to patiently wait for him to resolve this situation, Defendant Michael Maloy also reached out to film producer Frazer Bailey of Play TV in Australia and asked him if he had any rights to the film Quest For Youth given he has been involved working with Plaintiff on this project from the beginning. Frazer Bailey explained to Plaintiff that he responded to an email by Defendant Michael Maloy that the Plaintiff solely owned the footage and Chain of Title as he had signed over his rights to Plaintiff ready for distribution with him set up to receive his agreed backend producer fee of 15% when Plaintiff receives payment from distribution.

21.     Defendants left Plaintiff with no choice, but to file legal action in Federal Court against Defendants. Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendants for intentional infliction of emotional distress, intentional interference with prospective economic advantage, copyright infringement and tortious interference with contract/prospective economic advantage, stalking, harassment, gender discrimination, slander and libel.

## JURISDICTION AND VENUE

22.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq. federal legislation which protects the writings of authors, which includes motion pictures.

23.     This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C.

6

§§ 1331 and 1338 (a).

24.     This action is brought pursuant to 28 U.S.C § 1332(a)(1) based upon Diversity of Citizenship because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and it is between a citizen of New York and a citizen or subject of a different state.

25.     Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.

26.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Northern District of New York is the Judicial District in which a substantial part of the events forming the basis of the Complaint occurred, where a substantial part of the evidence involved in the subject action is situated, and where the majority of the witnesses to the events forming the basis of the Complaint reside. Furthermore, Defendants meet the requisite minimum contacts for jurisdiction in this District.

27.     In cases based on diversity of citizenship the lawsuit may be filed in the jurisdiction where the Plaintiff or the Defendant resides. 28 U.S.C. § 1332

28.     Not all Defendants reside in California, with Mark Skipper aka Skip Archimedes residing in Norfolk, United Kingdom.

29.     Given the diversity of Defendants and the Plaintiff domiciled in the Northern District of New York State, this Court and Judicial officers have proper jurisdiction and the right to act over Plaintiff's case against Defendant's.

**THE PARTIES**

30.     Plaintiff resides in Broome County, New York. Mailing Address: 200 Washington Avenue, 7181, Endicott, NY 13760.

31.     Plaintiff is ex-Navy and a self made 23 year independent film veteran working in the

Entertainment Industry as a Director, Writer and Producer, relying heavily on her reputation to earn a living to provide for her three minor children as their sole financial provider.

32.    Defendant Mark Skipper resides in Norfolk, United Kingdom. 47 Archdale Close, Kings Lynn, Norfolk, PE330QG United Kingdom.

33.    Defendant Mark Skipper is a Yoga Teacher, Life Coach and self proclaimed Motivational Speaker.

34.    Defendant Michael Maloy resides in Los Angeles County, California. 440 N Venice Blvd, Venice, Los Angeles, CA 90291.

35.    Defendant Michael Maloy is, according to him, a multi Emmy Winning Film Veteran with decades experience as a Consulting Executive Producer and Editor with a successful production company working with big networks, including, ABC in the Entertainment Industry managed by Vanguard based in New York and Los Angeles.

36.    Defendant Thomas Harrison resides in Los Angeles County, California. 12115 San Vicente Blvd, Unit 111, Los Angeles, CA, 90049. He owns property in Long Island with his wife.

37.    Defendant Thomas Harrison is a successful Talent Agent and Manager. "Tom joined Vanguard Management Group on November 2014, as Vice President of Talent. Bringing 25 years as an Industry Veteran. Tom Previously was a Partner at Harrison Stokes, as well as a Vice President of Diverse Talent Group, and a Senior agent at The Kohner Agency for multiple years representing such talent as Chris Evans, Ryan Reynolds, Sofia Vergara and Josh Holloway just to mention a few, Tom also shepherded multiple films into productions as well as representing a multiple academy award winning special effects and production studio along with a select group of writers and directors."

38.    Defendant David Guc resides in Los Angeles County, California. 8060, Melrose Avenue – Suite 400, Los Angeles, CA 90046. He owns property in New York City.

8

39.     Defendant David Guc is a successful Talent Agent and Manager. "Founder and President of Vanguard Management since 2000, and the Gersh Agency NY before that since 1985; Mr. Guç was responsible for having developed the Theatrical departments of Innovative Artists NY (1996), Don Buchwald and Associates, Susan Smith and Associates and J. Michael Bloom, Ltd. He personally represented the following from the onset of their careers: John Goodman, Kathleen Turner, John Turturro, Annette Bening, Ellen Barkin, Peter Gallagher, Wesley Snipes, Ken Olin, Cherry Jones, Peter Krause, Enrico Colantoni, amongst a host of other "actor's actors". Guç shepherded film projects for Eric Mendelsohn, Richard Wesley, Tom Noonan, Dennis Dugan, Eric Byler, Michael Lessac and Oz Scott. John Turturro's MAC and ILLUMINATA, Kathleen Turner's HOUSE of CARDS, V.I WARSHOWSKY at Disney and her three picture deal at Columbia with Victor Kaufman which included development of TABLE MONEY by Jimmy Breslin, FINAL PAYMENTS by Mary Gordon and A FLAG for SUNRISE by Robert Stone."

40.     Defendant Vanguard Management Team, Inc. owned by David Guc is registered in California. 8060, Melrose Avenue – Suite 400, Los Angeles, CA 90046 with a New York management team working remotely according to their website.

41.     Defendant Empirical Media, LLC owned by Michael Maloy is registered in California. 440 N Venice Blvd, Venice, Los Angeles, 90291.

42.     Defendant Empirical Reality, LLC owned by Michael Maloy is registered in California. 440 N Venice Blvd, Venice, Los Angeles, CA 90291.

43.     Defendant Harrison Thomas Group, LLC owned by Thomas Harrison and partnered with Vanguard since 2014 is registered in California. 8060, Melrose Avenue – Suite 400, Los Angeles, CA 90046.

## FACTUAL ALLEGATIONS

44.    In January 2023, Defendant Thomas Harrison on behalf of Vanguard talent agency based in Los Angeles and New York owned by David Guc, approached Plaintiff to represent her and manage her film and television career as a director, producer and writer individually, and her projects, including TV show concepts in the works, FreeKick Reality Show, Forgotten Documentary Series in principal photography, and Plaintiff's post production projects already filmed, including Documentary Film, Fountain of Youth, which had already been cut and distribution offered to Plaintiff with agreement signed in November 2018.

45.    Defendant Michael Maloy owner of Empirical Media and Empirical Reality was introduced to Plaintiff and film project Fountain of Youth as a "work made for hire" editor in January 2023 by Defendant Thomas Harrison acting as Plaintiff Manager who along with David Guc represented Michael Maloy who was trying to rebrand himself as a script writer in Hollywood and not an editor or producer.

46.    Plaintiff shared the latest cut of Fountain of Youth from her Vimeo of 1 hour and 48 minutes with Defendants, along with multiple detailed conversations spanning weeks with hours of direction from Plaintiff to Defendant Michael Maloy on the phone and via text explaining her vision for the film and what Plaintiff had attempted to achieve with her latest film cut in 2018 and her goals for the film for a Worldwide audience post pandemic.

47.    There were a few delays with the drives being sent to Defendant Michael Maloy given Plaintiff was cautious given his friendship with Greg Ellis aka Jonathan Rees and something didn't feel right to Plaintiff, however, with reassurances from Defendant Thomas Harrison who reiterated time and time again that Defendant Michael Maloy was a professional, decent, honest man, Plaintiff eventually sent the 4 drives to Defendant Michael Maloy in August 2023 with all

10

raw A and B roll footage for film project FOUNTAIN OF YOUTH sent to his address: 440 N VENICE BLVD, VENICE, LOS ANGELES 90291-4531 with tracking and signed for via USPS. Plaintiff's gut feeling turned out to be correct about Defendant Michael Maloy, given he tried to steal Plaintiff's film after receiving Plaintiff's footage and to this day hasn't returned her intellectual property and still possess Plaintiff's drives with all her raw A and B roll footage. Based on belief, he has shared this footage with Defendant Mark Skipper aka Skip Archimedes.

48.      During the period from February 2023 until filing Federal Court Petition in February 2024, Defendants were aware of abuse and violence Plaintiff had been subjected to by their friend and work colleague Greg Ellis aka Jonathan Rees who from November 2022 ongoing has been abusive, violent, fraudulent and causing harm to Plaintiff who consequently had no choice but to walk away from his documentary series The Respondent as the Director, Writer and Producer due to his bad behavior towards Plaintiff, and him receiving another Domestic Violence Restraining Order against him for sending out Revenge Porn and extorting his ex-girlfriend, and when Greg Ellis aka Jonathan Rees sent derogatory messages to all Defendants about Plaintiff, Defendants told Plaintiff they were not concerned nor did they believe him and they continued to work on her film project Quest For Youth with Plaintiff until First Cut was completed. Vanguard Management, Thomas Harrison, David Guc, Brianne Watson, Michelle Pantano, and Kevin McEleney not only manage Defendant Michael Maloy, but they have also managed Greg Ellis aka Jonathan Rees for more than 7 years and were aware of his violence, drug addiction, abuse and misogyny towards multiple women spanning years, yet covered for him and told Plaintiff, Greg Ellis aka Jonathan Rees was amazing, extremely talented and "a good man" when she was deciding whether to work with Greg Ellis aka Jonathan Rees on his project. Vanguard management knew he was not a good man as they were witness to abuse their client had committed over years, and they had covered up for him numerous times, including violent incidents with Sequoia Schmidt, Elizabeth Geeslin Zinn, John Koehler, Mackenzie Crook, Todd

Fisher, Simon Maxwell, Marti Noxon, Tricia O'Kelley, and others. Plaintiff trusted Vanguard and Thomas Harrison, who she had a huge amount of love and respect for and not only did they let Plaintiff down, but by their enabling of abusers they have caused significant harm to Plaintiff.

49.     After the Plaintiff completed the film Narration and produced and directed the project to fruition with first cut completed ready to go to sales agent who Plaintiff found through her own connections, and negotiated a deal herself directly with Sales Agent, Big Media who are based in New York State, fully executed in the best interests of Plaintiff's film with high interest by them for Worldwide distribution, especially from Italy, Spain, UK, India, South America, Poland and France, Defendant Michael Maloy  cut off Plaintiff.

50.     Defendant Thomas Harrison informed Plaintiff multiple times over weeks that the issue with Defendant Michael Maloy was to do with derogatory information that he had received from their friend and client Greg Ellis aka Jonathan Rees about Plaintiff , and Defendant Thomas Harrison told Plaintiff he knew it wasn't true and would resolve, and for her not to take any legal action or contact Defendant Michael Maloy directly, instead to sit tight and be patient, it will be fine, he will resolve.

51.     Defendant Thomas Harrison requested Plaintiff send him the video releases from Cast and Experts who Plaintiff and crew interviewed for the film spanning years, and all contracts which form the chain of title. Plaintiff expressed her concern to Defendant Thomas Harrison that this situation didn't feel right and didn't want Defendant Michael Maloy to receive the releases or contracts, or for him to be told the name of the Sales Agent or Distributor to prevent further complications that Plaintiff now felt existed, which Defendant Thomas Harrison agreed to keep private until this matter was resolved and reassured Plaintiff that if she sent Defendant Thomas Harrison the original video releases, updated video releases, and contracts as part of the Chain of Title along with the signed distribution agreement between Plaintiff and Sales Agent, Defendant Michael Maloy would edit Plaintiff's Director film notes from First Cut in order to send Final

Cut to Sales Agent given they were ready for Worldwide Distribution.

52.     Defendant Thomas Harrison lied to Plaintiff and told Defendant Michael Maloy the name of Sales Agent and Distributor.

53.     After all Chain of Title documents were received by Defendant Thomas Harrison sent to him by the Plaintiff , Defendant Michael Maloy contacted the Sales Agent Big Media via their contact form on their website given he didn't have a direct relationship with them, stating to them in writing that the film Quest For Youth was owned by him and Plaintiff didn't have the authority to sign an agreement with them.

54.     Defendant's friend Greg Ellis aka Jonathan Rees persevered for months to discredit Plaintiff by any means necessary for what he believes is a betrayal due to  Plaintiff reporting him for abuse, violence, fraud, theft and gun crimes, and walking away from him and his project, on a rampage to contact as many of Plaintiffs business associates and contacts as possible, including finding Defendant Mark Skipper aka Skip Archimedes who was not in the Entertainment Industry, not known by the other Defendants at this time, living thousands of miles away in the Countryside of Norfolk, in the United Kingdom working as a Yoga Teacher and Life Coach. Defendant Mark Skipper aka Skip Archimedes for as long as Plaintiff has known him has been desperate to connect with celebrities and make a name for himself in Hollywood, and no doubt why he was happy to align with his new friend Greg Ellis aka Jonathan Rees and act as an enabler given he was disgruntled after Plaintiff  walked away from his project due to his story not being authentic.

55.     Defendant Mark Skipper aka Skip Archimedes sent a follow up email to Sales Agent Big Media after he was connected directly with Defendant Michael Maloy via their new mutual friend, which was also sent via Sales Agent website contact form stating he along with Defendant Michael Maloy would make an even better version of the film without Plaintiff , asking Big Media to contact him to discuss future distribution without Plaintiff involved, along with

Defendant Mark Skipper aka Skip Archimedes sharing derogatory false information about Plaintiff and websites that were set up to hurt Plaintiff's reputation and ruin her relationship with the Sales Agent and get Plaintiff's film pulled, which happened with the agent contacting Plaintiff in or around January 2023 to inform her they have to put a hold on distribution and pulled Plaintiff's film from their catalogue and website not only ruining Plaintiff's reputation, but also disrupting Plaintiff's financial stability.

56.     Plaintiff has known Mark Skipper aka Skip Archimedes for more than 15 years in professional speaking circles and social settings. He was desperate to work in the Entertainment Industry and would vocalize that he was the next Tony Robbins and given his physique at the time and his flexibility, he was filmed for the B roll footage in the Fountain of Youth as a non-speaking actor.

57.     A couple of years after he was filmed for Fountain of Youth B Roll, Defendant Mark Skipper aka Skip Archimedes approached Plaintiff to make a documentary film about his life, who for years had spoken on stage about his story, even interviewed by British and Australian tabloids and other media about his story with him sharing that he was a British Gymnastics Champion, broke his back, unable to walk again, told he'd be in a wheelchair for life, only to heal himself using his own methods and 12 months later went on to win another Gold medal as British Gymnastics Champion for the second time. Unfortunately, during prep of this real story project, Plaintiff and crew uncovered Defendant Mark Skipper aka Skip Archimedes story was fake, with Plaintiff contacting British Gymnastics for confirmation

58.     Plaintiff spent substantial money and time on Defendant Mark Skipper aka Skip Archimedes real story project only to walk away with him refusing to back down from his fraudulent story and instead tried to extort Plaintiff with threats of court action for breach of contract trying to force Plaintiff to continue on the project as Director and Producer even though his story wasn't true, or else Plaintiff would be hurt. Plaintiff has the legal right to walk away

14

from any project for any reason, but in this case, she couldn't make a true story documentary film about Mark Skipper aka Skip Archimedes when his story wasn't the truth. After mediation failed with his friend Tamer Hassan and Tamer's manager Camilla Storey who offered Plaintiff $100,000 to turn a blind eye and make the project, Plaintiff ignored Defendant Mark Skipper aka Skip Archimedes and eventually the threats stopped and Plaintiff heard nothing more about this for more than 4 years until Defendant Mark Skipper aka Skip Archimedes was contacted by Greg Ellis aka Jonathan Rees who connected Defendant Mark Skipper aka Skip Archimedes to Defendants Thomas Harrison and Michael Maloy providing him with their private cell phone numbers to sabotage Plaintiff's relationships and film projects.

59.    Given Plaintiff uncovered Defendant Mark Skipper aka Skip Archimedes story was fake, Plaintiff didn't want to include him in her film Fountain of Youth, not even as a non-speaking actor for B Roll footage as the publicity from Plaintiff's film would add credibility to his fake story and she told Defendant Michael Maloy not to use this footage shot in Mexico, and instead Plaintiff would shoot other footage and suggested some stock footage to fill gaps to keep the flow of the film in the meantime. Defendant Michael Maloy accommodated Plaintiff's wishes given she is the Director, Producer and owner of the Film and raw footage.

60.    Originally the film was tentatively called Eternal Youth, which Plaintiff changed to Fountain of Youth in or around 2016. As the first cut post pandemic was close to completion in 2023,  Plaintiff felt the name Fountain of Youth still wasn't right for the film given it was more a Quest to uncover the knowledge of the Fountain of Youth, how to live longer in our lifetime, reduce stress, control emotions, eat and drink better, move, meditate and breathe more efficiently, and why Plaintiff changed the name to Quest For Youth and sent new film name to Defendants via text, which was received and well liked by Defendants. Documentary films like Quest For Youth can take years to come to fruition due to interviews in various countries around the world, timing of subject matter, and supply and demand.

61.     When Plaintiff was cut off after film was narrated by Plaintiff and first cut completed, followed by Defendants contacting Plaintiff's Sales Agent Big Media with derogatory information and a YouTube link showing Defendant's were attempting to make their own version of Plaintiff's film: https://www.youtube.com/watch?v=UE-oxT_AzJg, Plaintiff became extremely concerned and contacted the Copyright Office to file to protect her work [1-13494149971] only to find Defendant Michael Maloy had already filed a Copyright application for her film Quest For Youth, fraudulently failing to disclose to the Copyright office that he was "work made for hire" on his application, which he filed during the period of time Defendant Thomas Harrison told Plaintiff to be patient and not take any action, that he would resolve and insisted  Plaintiff send over video releases and chain of title for the project, which Plaintiff did believing Defendants were working towards a resolution getting all paperwork in order ready for film to be released.

62.     During this period between November 2023 and February 2024 when Plaintiff was told by Defendant Thomas Harrison not to take any action and to patiently wait for him to resolve this situation, Defendant Michael Maloy also reached out to film producer Frazer Bailey of Play TV in Australia and asked him if he had any rights to the film Quest For Youth given he has been involved working with Plaintiff on this project from the beginning. Frazer Bailey explained to Plaintiff that he responded to an email by Defendant Michael Maloy that the Plaintiff solely owned the footage and Chain of Title as he had signed over his rights to Plaintiff ready for distribution with him set up to receive his agreed backend producer fee of 15% when Plaintiff receives payment from distribution.

63.     Frazer Bailey explained to Plaintiff that he believed at the time that this reach out by Defendant Michael Maloy wasn't nefarious, simply an editor doing his due diligence prior to film distribution, which wasn't unusual and why he was happy to share information freely with Defendant Michael Maloy believing he was still working for Plaintiff and in the best interest of

her project, not realizing after these emails back and forth that Defendant Michael Maloy had ulterior motives for contacting him and not only lied to Frazer as the film had already been cut at this stage, but he in fact registered Quest For Youth with the Copyright Office attempting to take ownership of the project immediately after correspondence with Frazer Bailey confirmed Plaintiff owned the sole rights. Plaintiff believes that Defendant Michael Maloy wouldn't have registered copyright for Quest For Youth if Producer Frazer Bailey hadn't confirmed Plaintiff as the owner. Plaintiff fails to understand why Defendant Michael Maloy didn't attempt to register copyright prior to his communication with Frazer Bailey given he had been acting disgruntled since October, 2023 and why she believes his unlawful actions are motivated by gender. If Defendants Vanguard, Thomas Harrison and David Guc had dealt with their client Defendant Michael Maloy appropriately, reiterating to him that he was a "work made for hire" editor and enforced Plaintiff as the copyright owner and director of the film, resolving this matter swiftly, Defendant Michael Maloy would not have had the opportunity to file copyright knowing there would be severe consequences for his actions if he did, instead, just like they did with Greg Ellis aka Jonathan Rees for years, Vanguard, David Guc and Thomas Harrison enabled this abuse and protected Defendant Michael Maloy, destroying Plaintiff's business, reputation and her work in the process without a second thought, only thinking of their "boys club". Vanguard has a history of misogyny, sexism, racism and underpaying women in line with Labor Laws as detailed in other active lawsuits against them.

64.     On request by Defendant Michael Maloy, Frazer Bailey also provided information in writing about Defendant Mark Skipper aka Skip Archimedes stating he was a conman, which he shared in confidence only for Defendant Mark Skipper aka Skip Archimedes to contact Frazer Bailey a few days later writing to Frazer Bailey he was in danger from Plaintiff and it was essential they speak immediately. Frazer Bailey contacted the Plaintiff upset that Defendant Michael Maloy had betrayed his trust sharing information about Defendant Mark Skipper aka

17

Skip Archimedes and didn't understand why Plaintiff's Editor would act in this way.

65.     In or around January 2024, Plaintiff explained to Frazer Bailey that the Editor Defendant Michael Maloy was not who she thought he was and Plaintiff was considering working with another Editor to finish the film from first cut to final cut ready for Worldwide distribution, but would try one more attempt at communicating with Defendant Michael Maloy first before making a decision.

66.     In or around February 2024, Plaintiff sent an email to Defendant Michael Maloy and cc'd Defendant Thomas Harrison with 3 options on how Plaintiff and Defendant Michael Maloy could conclude their relationship, which was consequently ignored by Defendant Michael Maloy.

67.     In or around February 2024, Plaintiff sent notice via email to Vanguard Talent Agency, David Guc and Thomas Harrison that they were fired from representing Plaintiff and her projects.

68.     In or around February 2024, Plaintiff sent a Cease and Detest notice via email to Defendants Mark Skipper aka Skip Archimedes, Michael Maloy, Thomas Harrison, David Guc for all Defendants to stop using Plaintiff's raw footage and Copyright and asked for all drives to be returned to Plaintiff , ignored by Defendants.

69.     Plaintiff believes Defendants concocted their plan with a clear intention to harm Plaintiff with a conspiracy to steal Plaintiff's film and raw footage, abusing Plaintiff , creating unnecessary emotional, physical and financial distress, disrupting Plaintiff's business, damaging her reputation, creating financial instability for Plaintiff and her family, and to fraudulently receive payments for Plaintiff's creativity, originality and fixation — a substantial sum which could return USD$2.5m - USD$5m to  Plaintiff paid over 3 years for global distribution.

70.     Plaintiff has demonstrated a sufficient claim against Defendants, including Michael Maloy and his company Empirical Media with him lying to Plaintiff's Producer Frazer Bailey in emails, and deceitfully filing Copyright with the Copyright Office while Plaintiff was patiently

waiting for a resolution at the request of Defendant Thomas Harrison on behalf of Vanguard Management and David Guc, after Plaintiff became aware there was an issue after their friend and co-worker Greg Ellis aka Jonathan Rees contacted each of them, including Mark Skipper aka Skip Archimedes with falsehoods about Plaintiff.

71.    Since Plaintiff has known Defendant's Michael Maloy, Thomas Harrison and David Guc and Plaintiff begun working with their respective companies also listed as Defendants, Plaintiff has lived and worked from her residence in Broome County, New York.

72.    Defendants are aware Plaintiff is domiciled in New York State, 'Williamson v. Osenton' prior to being introduced to Defendants with meetings held remotely and discussions about Plaintiff's direction for her Documentary Film Quest For Youth conducted via text, email and phone calls.

73.    Defendant Michael Maloy is aware drives for Quest For Youth were situated with Plaintiff in Broome County, New York and sent to him from USPS, 200 Washington Avenue, Endicott, NY, 13760 in August 2023 to his home address in Venice, California, which he has still failed to return to Plaintiff as of today's date.

74.    The claim arose in New York State.

75.    All agreements and contracts executed by Plaintiff are agreed under New York State Law.

76.    As the Owner and Producer in charge of the production Quest For Youth, Plaintiff sends out contracts and agreements to crew and cast, which is standard in the Entertainment Industry. Crew or cast do not create their own contracts or video releases to send to the Producer to sign for their role in the production, they receive a contract to sign from the Production Company, which is then executed by Producer, and forms the basis of the relationship, and jurisdiction, included in the Chain of Title ready for distribution.

## FIRST CAUSE OF ACTION

### (Direct Copyright Infringement - Public Performance), 17 U.S.C. §501 et seq. Against Defendants

77.  Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

78.  The Quest For Youth Documentary Film is an original, creative work in which Plaintiff owns a valid copyright.

79.  The Film is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

80.  Plaintiff has not granted Defendants a license or the right to use the Film in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendants. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights. Defendant's reproduction of the Film and display of the Raw Footage and/or Trailer, Film Cut on YouTube and other mediums constitutes willful copyright infringement.

81.  Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Film and Raw Footage in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Raw Footage and Film without Plaintiff's consent or authority. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the

alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c).

82. Defendant Michael Maloy filed copyright with the United States Copyright Office on January 14th 2024 providing USCO with deliberately false and misleading information with the intent to acquire ownership of Plaintiffs Raw Footage, Film and Copyright.

83. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

84. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of her Raw Footage, Film and Copyright pursuant to 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

### (Direct Copyright Infringement - Reproduction), 17 U.S.C. §501 et seq. Against Defendants

85. Plaintiff repeats and re-allege and incorporate herein by reference all the foregoing allegations as if set forth herein.

86. Each Defendant, without authority, is making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiffs registered copyrighted work. Each Defendant's conduct constitutes direct infringement of Plaintiffs' exclusive right under the Copyright Act to reproduce their copyrighted works, 17 U.S.C. § 106 (1).

87. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

88. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyright and exclusive rights under copyright, Plaintiffs are entitled to their actual damages plus each Defendant's profits from infringement, to be proven at trial. Alternatively, Plaintiffs are entitled

to the maximum statutory damages pursuant to 17 U.S.C. § 504 (c).

89.     Plaintiff is entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

90.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring each Defendant to immediately stop making the Film for broadcast through their respective contacts and streaming platforms, and immediately cease any reproduction of the Film or raw footage used within Film.

## THIRD CAUSE OF ACTION

### (Inducement of Copyright Infringement), 17 U.S.C. §501 et seq.
### Against Defendants

91.     Plaintiff repeats and re-allege and incorporate herein by reference all the foregoing allegations as if set forth herein.

92.     Defendants' have infringed and are infringing on Plaintiffs' rights in their registered copyrighted works by, *inter alia*, directing platforms YouTube and potentially others, to publicly perform the Film.

93.     YouTube are therefore directly infringing Plaintiffs' exclusive rights of reproduction and public performance, under 17 U.S.C. §§106 (1) and (4).

94.     Each Defendant is liable under the Copyright Act for inducing the infringing acts on platforms, including YouTube. By its clear expression and other affirmative steps, each Defendant is unlawfully fostering copyright infringement.

95.     Defendants are fully aware that Plaintiff's work is copyrighted and by uploading to YouTube and potentially other platforms, they authorized for purchase Plaintiff's film online via digital download services. Defendants are equally aware that their subscribers are unlawfully

publicly performing Plaintiff's copyrighted work.

96.     Each Defendant intends, encourages, and induces its subscribers to download Plaintiff's film and uses Plaintiff's works to raise finance for [their] project fraudulently.

97.     Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's rights.

98.     As a direct and proximate result of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to actual damages, plus each Defendant's profits from infringement, to be proven at trial. Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504 (c).

99.     Plaintiff is entitled to her costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

100.    Each Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measure in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to immediately stop making the Film for broadcast or using Plaintiff's raw footage.

## **FOURTH CAUSE OF ACTION**

### **(Contributory Copyright Infringement), 17 U.S.C. §501 et seq.**
### **Against Defendants**

101.    Plaintiff repeats and re-allege and incorporate herein by reference all the foregoing allegations as if set forth herein.

102.    Defendants' subscribers have infringed and are infringing Plaintiff's rights in their registered copyrighted film works by, *inter alia*, publicly performing the Film.

103.    Defendants' subscribers are therefore directly infringing Plaintiffs' exclusive rights of reproduction and public performance, under 17 U.S.C. §§ 106 (1) and (4).

23

104. Each Defendant is liable as a contributory copyright infringer for the infringing acts of its subscribers. Each Defendant enables, induces, facilitates, and materially contributes to each act of infringement by its subscribers.

105. Each Defendant has actual and constructive knowledge and benefits from its subscribers to copy and publicly perform Plaintiff's copyrighted work.

106. Acting with this actual and constructive knowledge, Each Defendant enables, facilitates, and materially contributes to its subscribers' copyright infringement, which could not occur without their enablement or upload to platforms, including YouTube.

107. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiff's rights.

108. As a direct and proximate result of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to her actual damages, plus each Defendant's profits from infringement, to be proven at trial. Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504 (c).

109. Plaintiff is entitled to her costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

110. Each Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to immediately stop making the Film available for broadcast.

### **FIFTH CAUSE OF ACTION**

**(Vicarious Copyright Infringement), 17 U.S.C. §501 et seq.**
**Against Defendants**

111.    Plaintiff repeats, re-allege and incorporate all the foregoing allegations as if set forth herein.

112.    Defendants' subscribers have infringed and are infringing Plaintiff's rights in their registered copyrighted film works by, *inter alia*, directing the Defendants' respective subscribers, including on YouTube, to publicly perform the Film.

113.    Defendants' subscribers are therefore directly infringing Plaintiff's exclusive rights of reproduction and public performance, under 17 U.S.C. §§ 106 (1) and (4).

114.    Each Defendant is vicariously liable for the infringing acts of their subscribers.

115.    Each Defendant has both the right and the ability to supervise its subscribers' infringing conduct, and to prevent its users from infringing Plaintiffs' copyrighted film work.

116.    Defendants significantly and directly benefits from the infringement by their subscribers.

117.    Defendants derive substantial revenue tied directly to the volume of subscribers they can attract to their platforms, including YouTube.

118.    Defendants' acts of infringement have been willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiff.

119.    As a direct and proximate result of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to their actual damages plus each Defendant's profits from infringement, to be proven at trial. Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504 (c).

120.    Plaintiff is entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

121.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendants to immediately stop making the Film for broadcast

through their respective platforms, including YouTube and to stop using Plaintiff's raw footage and works.

## **SIXTH CAUSE OF ACTION**

### **(Conversion), 17 U.S.C. §501 et seq.**
### **Against Defendants**

122.    Plaintiff repeats, re-allege and incorporate all the foregoing allegations as if set forth herein.

123.    Defendants' took possession of the Film and unlawfully distributed to, but not limited to, YouTube who subsequently published and distributed scenes accumulating to a substantial amount of the Film to the public, infringing Plaintiff's rights in her registered copyrighted film.

124.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of their, conduct as alleged herein was fraudulent, willful, reckless, and/or with knowledge or gross negligence.

125.    The above-referenced conduct caused and continues to cause Plaintiff substantial damages, and given the fraudulent conduct involved in the conversion, subjects the Defendants to punitive damages.

## **SEVENTH CAUSE OF ACTION**

### **(Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law), N.Y. Exec. Law §§ 290, *et seq*. ("NYSHRL")**
### **Against Defendants**

126.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

127.   From August 2023, Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to harassment, emotional distress, and a hostile work environment.

128.  As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

129.  As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

130.  Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

131.   This action is timely because it falls within CPLR § 214-j and is brought during the one-year time period set forth in that section. The claims brought herein allege intentional and negligent acts and/or omissions for physical, psychological, and other injury suffered as a result of conduct that would constitute abuse under New York Penal Law, and such acts and/or omissions were committed against Plaintiff when she was over eighteen years of age.

## EIGHTH CAUSE OF ACTION

### (Tortious Interference with Contract/Prospective Economic Advantage)
### Against Defendants

132.  Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

133.  In placing false calls and/or sending emails to Plaintiff's sales agent "Big Media" including, but not limited to, on January 17th 2024 and 25th January 2024, her business associates and distribution, directly throughout New York State, California State, United Kingdom and Canada, Defendant interfered with Plaintiff's affiliations and prospective affiliations and business opportunities.

134.  In interfering with her affiliations and prospective affiliations, Defendants acted with the

sole purpose of harming Plaintiff or used improper or illegal means that amounted to a crime or independent tort.

## NINETH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Relations)

### Against Defendants

135.  Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

136.  Plaintiff is a Professional Filmmaker working in the Entertainment Industry as a Director, Producer and Writer, affiliated with multiple talent agencies and production houses throughout the World, including New York State and Los Angeles, California.

137.  In her position, Plaintiff is entrusted with cast's private information, video releases with their personal home address, signature, content and personal matters, with her reputation central to her job as a Director and Producer.

138.  Defendants knew that falsely reporting that Plaintiff was "dangerous", "thief", "fraud "blackmailer" "con" including, but not limited to, emailing "Big Media" on 17th January 2024 and 25th January 2024 with falsehoods would adversely impact her ability to distribute her film, retain and find new work and engaged in such conduct for that purpose.

139.  As a result of Defendant's actions, Plaintiff has been damaged.

140.  Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TENTH CAUSE OF ACTION

### (Crime of abuse motivated by gender)

### Against Defendants

141.  Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

142.  From August 2023, the above-described conduct of Defendants including, but not limited to Defendants repeated abuse is a "crime of abuse motivated by gender" against Plaintiff.

143.  The above-described conduct of Defendants, including, but not limited to, Defendant's repeated emotional and psychological abuse of Plaintiff in New York State, constitutes a "crime of abuse" against Plaintiff and is a "crime of abuse motivated by gender".

144.  Defendants' Corporations enabled Defendant's commission of the crime of abuse motivated by gender.

145.  As a direct and proximate result of the aforementioned crime of gender-motivated abuse, Plaintiff has sustained and will continue to sustain, monetary damages, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

## ELEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### Against Defendants

146.  Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

147.  From August 2023, Defendants have engaged in the intentional, extreme, and outrageous conduct of abuse, harassment, conspiracy and theft of Plaintiff's Film Quest For Youth.

148.  Defendants also contacted Plaintiff's Business Contacts, Sales Agent "Big Media"

including, but not limited to, on 25th January 2024 falsely reporting that Plaintiff was a "thief", "dangerous", "con" and shared exclusive websites about Plaintiff with falsehoods to ruin her reputation and financial stability. Defendants did all of this knowing that their decision to do so would have irreversible, lifelong consequences for Plaintiff and her mental well-being, along with negativity impacting Plaintiff's three minor children who are cared for solely by Plaintiff.

149.  Defendants conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

150.  Defendants sole purpose in stealing Plaintiff's Film and Raw Footage was for financial benefit and to harass and embarrass Plaintiff, ruin her reputation and cause her harm.

151.  Defendants intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

## TWELFTH CAUSE OF ACTION

### (Stalking/Cyberstalking) 18 U.S.C. § 2261A

### Against Defendants

152.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

153.  From August 2023 until filing in Federal Court, Defendants with intent to harass and intimidate Plaintiff used an interactive computer service, an electronic communication service, an electronic communication service of interstate commerce, and facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Plaintiff in violation of Title 18, United States Code, Section 2261A(2).

154.  Defendants intent on destroying Plaintiff, stalked her sharing aspects of her life with an exclusive website sent to her Sales Agent "Big Media" including, but not limited to, on 17th

January 2024 and 25th January 2024, and her business associates to harm Plaintiff and ruin her reputation, humiliate and harm Plaintiff with falsehoods and distorted facts ongoing as of filing action against Defendants in Federal Court with Defendants acting in a calculated and vengeful way in Defendants pursuit to hurt and destroy Plaintiff.

155.  Defendants clearly intent on harming Plaintiff, shared a flyer with falsehoods about Plaintiff to negatively impact Plaintiff by sharing the flyer and website links electronically to Plaintiff's board members, business associates, contractors working with Plaintiff, friends, and other industry people to cancel Plaintiff in the Entertainment Industry and prevent her from distributing her projects.

156.  Defendants intent on revenge, created a hate campaign on social media platforms against Plaintiff, recruiting enablers against Plaintiff to harm, embarrass and reputation savage Plaintiff and her projects, destroying her business and role as a Producer and Director in the Entertainment Industry.

157.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## THIRTEENTH CAUSE OF ACTION

### (Harassment) NY Penal Law 240.26

### Against Defendants

158.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

159.  From August 2023 until filing in Federal Court, Defendants with intent to harass and

intimidate Plaintiff used an interactive computer service, an electronic communication service, an electronic communication service of interstate commerce, and facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Plaintiff in violation of NY Penal Law 240.26.

160. Defendants intent on destroying Plaintiff, harassed and stalked her and shared aspects of her life with an exclusive website sent to her Sales Agent "Big Media" including, but not limited to, on 17th January 2024 and 25th January 2024, and her business associates to harm Plaintiff and ruin her reputation, humiliate and harm Plaintiff with falsehoods and distorted facts ongoing as of filing action against Defendants in Federal Court with Defendants acting in a calculated and vengeful way in Defendants pursuit to hurt and destroy Plaintiff.

161. Defendants clearly intent on harming Plaintiff, shared a flyer with falsehoods about Plaintiff to harass and negatively impact Plaintiff by sharing the flyer and website links electronically to Plaintiff's board members, business associates, contractors working with Plaintiff, friends, and other industry people to cancel Plaintiff in the Entertainment Industry and prevent her from distributing her projects.

162. Defendants intent on revenge, created a hate campaign on social media platforms against Plaintiff, recruiting enablers against Plaintiff to harm, embarrass and reputation savage Plaintiff and her projects, destroying her business and role as a Producer and Director in the Entertainment Industry.

163. Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with

interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FOURTEENTH CAUSE OF ACTION

### (Piracy Under Law of Nations) 18 U.S. Code § 1651

### Against Defendants

164. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

165. New York's criminal code are laws designed to protect the intangible property of New York State Residents. Defendants are subject to 17 U.S.C. § 506, for online piracy for willfully infringing on Plaintiff's copyright for financial gain knowing Defendants did not have the right to do so.

166. Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FIFTEENTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

167. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

168. Including, but not limited to, on 25th January 2024, Defendants made defamatory and

disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendants made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. First disparaging statement "April Chandler is an Attempted Murderer".

169.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SIXTEENTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

170.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

171.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendants made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Second disparaging statement "April is a Thief".

172. Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with

interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SEVENTEENTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

173. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

174. Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendants made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Third disparaging statement "April Chandler is Dangerous"

175. Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## EIGHTEENTH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

176. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

177. Including, but not limited to, on 25th January 2024, Defendants made defamatory and

disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendants made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Fourth disparaging statement "April Chandler is a Fraud".

178.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## <u>NINETEENTH CAUSE OF ACTION</u>

### (Libel and Slander)

### Against Defendants

179.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

180.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendants made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Fifth disparaging statement "If you would like to read more information on April Chandler then please check this website out because she has conned so many people and I wouldn't wish for this to happen with your company.".

181.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with

interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TWENTIETH CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

182.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

183.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendants made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Sixth disparaging statement "She was hired as an Executive Producer but she ended up trying to black mail all the people that were involved with it".

184.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TWENTY-FIRST CAUSE OF ACTION

### (Libel and Slander)

### Against Defendants

185.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

186.  Including, but not limited to, on 25th January 2024, Defendants made defamatory and disparaging statements oral and/or written about Plaintiff, is in fact false; that, at the very least, the Defendant made the statement and negligent in doing so; and that the disparaging and defamatory statement actually caused damage. Seventh disparaging statement "April Chandler has committed many legal offences regarding this".

187.  Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendants for their willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

188.  Plaintiff requests permission from the Court to file such additional causes of action Plaintiff deems necessary as a result of further investigation by Plaintiff and the production of Defendants discovery responses.

## JURY DEMAND

189.  Plaintiff hereby demands a trial of this action by jury on all issues.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court enter judgment in Plaintiffs favor and against Defendants and grant Plaintiff the following relief:

I. Awarding Plaintiff damages;

II. Compensatory damages, including past and future economic damages and non-economic damages;

III. Punitive damages, as allowed by law;

IV. Attorneys' fees, as allowed by law;

V. All costs associated with this action, including, but not limited to, expert fees, deposition expenses, travel expenses, filing fees, and trial presentation expenses on all claims allowed by law;

VI. Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate; and

VII. Appropriate injunctive relief against Defendants, including a permanent injunction ordering Defendants to cease using Plaintiffs copyright and footage of Plaintiffs in Defendants possession, requiring that each Defendant and their respective agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of any of Plaintiff's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created.

VIII. Any other appropriate relief at law and equity that this Court deems just and proper.

Signed: _____

Pro Se Plaintiff

Date: 06/28/2024

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

## CERTIFICATE OF SERVICE

Case No: 3:24-cv-206
Date filed: 06/28/2024

Plaintiff:         **APRIL CHANDLER**
Defendants:        **MARK SKIPPER AKA SKIP ARCHIMEDES, MICHAEL MALOY
                   THOMAS HARRISON, DAVID GUC et al.**

I, April Chandler, hereby certify that I am the plaintiff herein and served a copy of the following documents:

**SECOND AMENDED COMPLAINT, CERTIFICATE OF SERVICE** on Defendants:

1) **David Guc/Vanguard Management** at 8060 Melrose Avenue—Suite 400, Los Angeles, California 90046

2) **Thomas Harrison/Harrison Thomas Group** at 12115 San Vicente Blvd, Unit 111, Los Angeles, California, 90049-4929

3) **Michael Maloy/Empirical Media** at 440 N Venice Blvd, Venice, Los Angeles, California, 90291-4531

4) **Mark Skipper aka Skip Archimedes** at 47 Archdale Close, Kings Lynn, Norfolk, PE330QG, United Kingdom

in a 1st Class postpaid properly addressed envelope under the exclusive care and custody of the United States Post Office by mailing and depositing a true and correct copy of said document at:

USPS 117 Rano Blvd, Vestal, NY 13850 on the following date: 06/28/2024

I certify that the foregoing is true and correct.

Dated: 06/28/2024

Signed: _____
Name: April Chandler

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

### CLERK'S CERTIFICATE OF ACTION TAKEN ON PLAINTIFF(S) REQUEST FOR ENTRY OF DEFAULT

_____

April Chandler

vs.                                    CASE NUMBER: **3:24-cv-206 (GTS/ML)**

Mark Skipper, et al.

_____

    I, JOHN M. DOMURAD, CLERK, by Matthew Gerace, Deputy Clerk, certify that I have reviewed the Court's docket and have determined that proof of proper service for the party against whom judgment is being sought has been filed and that this party has not appeared in the action. Accordingly, entry of default is hereby noted and entered on this 12th day of August, 2024 against Mark Skipper.

Dated: _____August 12, 2024_____

Clerk of Court

By: s/ Matthew Gerace

_____

Deputy Clerk