UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: N/A | Attorneys Present for Defendants: N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. [324]); OVERRULING DEFENDANT/COUNTER-PLAINTIFF'S EVIDENTIARY OBJECTIONS (DKT. 328-2); AND ORDERING DEFENDANT TO DELIVER MEDIA DRIVES**

Before the Court is Plaintiff/Counter-Defendant April Chandler's ("Chandler" Or "Plaintiff") Motion for Partial Summary Judgment ("motion"). Dkt. # 324 ("*MSJ*"). Accompanied with her motion, Plaintiff filed: a Master Exhibit List, Dkt. # 325; Plaintiff's Statement of Uncontroverted Facts, Dkt. # 326; the Declaration of April Chandler in Support of Plaintiff's Motion for Partial Summary Judgment ("Chandler Declaration"), Dkt. # 324-3 ("*Chandler Decl. ISO MSJ*"); and several exhibits submitted with Plaintiff's motion, Dkt. # 324–324-2.

Defendant/Counter-Plaintiff Michael Maloy ("Maloy" or "Defendant") opposed the motion, *see* Dkt. # 328 ("*Opp'n*"), and filed: Defendant's Statement of Genuine Disputes and Additional Material Facts, Dkt. # 328-1; Defendant's Evidentiary Objections, Dkt. # 328-2 ("*Evid. Obj.*"); the Declaration of Michael Maloy in Support of His Opposition, Dkt. # 328-3 ("*Maloy Decl.*"); and exhibits attached thereto, Dkt. # 328-4. Plaintiff replied, Dkt. # 333 ("*Reply*"), and filed a declaration in support of her Reply, Dkt. # 331 ("*Chandler Reply Decl.*").[1]

[1] Because both parties are proceeding *pro se*, the Court is "obligated to liberally construe [their] documents," looking "to the contents of [their] filing[s] rather than [their] form." *Watanabe v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. After considering the papers and the evidence submitted, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment and **OVERRULES** Defendant's Evidentiary Objections. The Court further **ORDERS** Plaintiff to deliver her media drives within fourteen (14) days of this Order. The September 4, 2026 hearing is **VACATED**.

I. Background

A. Absence of Evidence Cited in Statement of Genuine Disputes

On July 17, 2026, Plaintiff filed her Statement of Uncontroverted Facts, pursuant to C.D. Cal. Local Rule 56-1. Dkt. # 326. On July 31, 2026, Defendant filed his Statement of Genuine Disputes and Additional Material Facts ("Statement of Genuine Disputes"). Dkt. # 328-1. Though Defendant's Additional Material Facts provides citations to the Record, Defendant failed to cite any evidence in the body of his Statement of Genuine Disputes. *See id.* at 1–18. C.D. Cal. Local Rule 56-2 provides, in relevant part:

> Any party who opposes a motion for summary judgment or partial summary judgment must serve and file with the opposing papers a separate 'Statement of Genuine Disputes' setting forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated. . . . For each disputed fact, the Statement of Genuine Disputes **must provide pinpoint citations** (including page and line numbers, if available) **to evidence in the record** that supports the claim that the fact is disputed.

C.D. Cal. L.R. 56-2 (emphases added).

The Court's Standing Order also requires the parties "to comply precisely with Local Rule 56-1 through 56-4." *See* Standing Order, Dkt. # 149 ("*Standing Order*") at 7,

*Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) (cleaned up), *cert. granted sub nom. Watanabe v. Derr*, 2026 WL 1780123 (June 22, 2026); *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (same).

¶ 7c. The Standing Order reiterates the same requirement found in Local Rule 56-2: that if an opposing party disputes a movant's proffered fact, he "must clearly indicate which part is being disputed, followed by the opposing party's evidence controverting the fact." *Id.* ¶ 7(c)(i) (emphasis added). The Court's Standing Order further provides that "[t]o demonstrate that a fact is disputed, the opposing party must briefly state why it disputes the moving party's asserted fact, **cite to the relevant exhibit or other piece of evidence**, and describe what it is in that exhibit or evidence that refutes the asserted fact." *Id.* (emphasis added).

Throughout the Statement of Genuine Disputes, Defendant disputes only Plaintiff's characterizations or interpretations of proffered facts. *See, e.g.*, Dkt. # 328-1 ¶¶ 4 ("Defendant disputes Plaintiff's characterization that the cited materials establish an unbroken chain of title or exclusive ownership of the completed motion picture and underlying materials."), 5 ("Defendant disputes Plaintiff's characterization that the communications establish the legal sufficiency or scope of the rights allegedly conveyed under the Quitclaim Agreement."), 12 ("Defendant disputes any implication that this fact determines ownership of the completed film or Defendant's independently created contributions."), 15 (disputing Plaintiff's characterization of fact), 17 (same), 18 (same), 19 (same). This was improper, as Defendant was obligated to specifically point to evidence that raises a genuine dispute of material fact. *See also* Fed. R. Civ. P. 56(c)(1).

"[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Id.* at 247–48. "[M]ere disagreement or the bald assertion that a genuine [dispute] of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989); *see also Trace v. Anaheim Police Dep't*, No. 8:24-cv-02847-FWS-ADS, 2025 WL 3158119, at *6 (C.D. Cal. Nov. 6, 2025), *appeal filed*, No. 25-7617 (9th Cir. Dec. 4, 2025). Ordinarily, where the nonmovant fails to provide pinpoint citations to evidence in the Statement of Genuine Disputes, courts deem the movant's facts as undisputed. *See, e.g.*, *Trace*, 2025 WL 3158119, at *6; *see also* C.D. Cal. L.R. 56-4 ("In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving

party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes . . ."). However, because Defendant's Opposition brief points to evidence in the Record, the Court declines to deem all of Plaintiff's facts as undisputed. *Cf.* C.D. Cal. L.R. 56-4.

At the same time, the "Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Disputes." *Id.* Accordingly, for the purposes of reciting the background information in this case, the Court again defers to the relevant allegations contained in Plaintiff's Third Amended Complaint ("TAC"). Dkt. # 228 ("*TAC*"). The Court will address the parties' factual disputes as necessary further below.

B. Relevant Allegations in Plaintiff's TAC

Plaintiff brings this copyright infringement lawsuit against Defendants Mark Skipper *a/k/a* Skip Archimedes ("Skipper"), Michael Maloy, and Empirical Media LLC (collectively, "Defendants") for their unlicensed reproduction and competing claim to the rights of the film, "Quest for Youth," formerly known as "Fountain of Youth" ("Quest for Youth" or "the Film"). *See TAC* at 1. The TAC alleges as follows:

Plaintiff is a "self[-]made" independent film veteran who works as a Director, Writer, and Producer. *Id.* ¶ 34. In January 2023, Thomas Harrison, on behalf of the Vanguard Talent Agency, approached Plaintiff to represent and manage her film and television career, including the film "Quest for Youth." *Id.* ¶ 41. The film is a two-hour long documentary containing "at a minimum 90% of Plaintiff's raw footage" consisting of interviews with experts on how to reduce stress and live a healthier, longer life. *See id.* ¶¶ 2–4, 41, 61. Plaintiff had "cut" the film in November 2018 and signed an agreement with Harrison for its distribution. *See id.* ¶ 41.

In January 2023, Plaintiff met Defendant Maloy, owner of Empirical Media LLC. *Id.* ¶ 42. Maloy agreed to work for Plaintiff on a "for hire" basis to edit and fill in gaps of Plaintiff's film with stock footage licensed from third party platforms. *See id.* ¶¶ 3, 9, 15, 21, 42. In August 2023, Plaintiff sent four drives to Maloy "with all raw A and B roll footage" for the film project. *Id.* ¶ 44. After receiving the footage, Defendant "tried to steal Plaintiff's film" and "to this day [has not] returned her intellectual property" and still

possesses her raw footage. *Id.* ¶ 45. Plaintiff believes Maloy shared this footage with Skipper. *Id.* ¶ 46. In February 2024, Skipper contacted Plaintiff's sale agent, "Big Media," attempting to steal her film and damage her reputation. *Id.* ¶¶ 10, 12. Specifically, Defendants contacted Big Media, stating that Plaintiff lacked authorization to sign the distribution agreement, and promising to make a "better version" of the film without Plaintiff; Defendants attempted to sign a new agreement with Big Media, excluding Plaintiff from the deal. *Id.* ¶¶ 16–18, 54 (alleging that Maloy contacted Big Media, representing that he owned the rights to Quest for Youth and that Plaintiff lacked authority to sign an agreement with them). Defendants provided Big Media with a YouTube link "showing Defendant[s] were attempting to make their own version of Plaintiff's film with her copyrighted materials[.]" *Id.* ¶ 63 (YouTube link omitted).

Plaintiff owns the complete Chain of Title and all raw footage used for the film. *Id.* ¶ 8. The experts in the film each signed video releases agreeing that the footage belonged to Plaintiff. *See id.* ¶ 15. On February 8, 2024, Plaintiff filed her copyright registration for the film with the U.S. Copyright Office ("USCO"). *Id.* ¶ 5. The USCO delayed providing Plaintiff with her Copyright Certificate pending a two-month investigation after Maloy filed a competing copyright claim for the film on January 14, 2024. *Id.* ¶¶ 7, 21.

## II. Procedural History

On September 8, 2025, the Northern District of New York transferred this action to this Court. Dkt. # 145. On December 19, 2025, Plaintiff filed her TAC, alleging six (6) causes of action for: (1) direct copyright infringement for the unlicensed copying, reproduction, distribution, adaptation, or public display of the Film; (2) direct copyright infringement for the unauthorized creation of copies of the Film; (3) inducement of copyright infringement for inducing the infringing acts on platforms such as YouTube; (4) contributory copyright infringement; (5) vicarious copyright infringement; and (6) conversion for the unlawful possession of the Film. *See TAC* at 16–23. On February 18, 2026, the Court judicially noticed Plaintiff's copyright registration and subsequently denied Maloy's motion to dismiss. *See* Dkt. # 262 at 3–9.

On February 23, 2026, Defendant filed his Answer to Plaintiff's TAC and accompanying counterclaims. *See* Dkt. # 270 ("*Answer*"). On June 23, 2026, the Court denied Defendant's motion for summary judgment. Dkt. # 321. Now pending is Plaintiff's Motion for Summary Judgment. The motion is fully briefed and ripe for disposition.

III. Legal Standard

A. Rule 56

Summary judgment is appropriate under Rule 56 when the moving party demonstrates the absence of a genuine dispute as to any material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Idaho Conservation League v. Poe*, 86 F.4th 1243, 1246 (9th Cir. 2023). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Jelinek v. Am. Nat'l Prop. and Cas. Co.*, 747 F. App'x 513, 514 (9th Cir. 2018); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgments."). Factual disputes that are irrelevant or unnecessary will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. On the other hand, "[a]n issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Airlines for Am. v. City and Cnty. of S.F.*, 78 F.4th 1146, 1152 (9th Cir. 2023) (internal quotation marks and citation omitted); *Fresno Motors*, 771 F.3d at 1125.

"To prevail at summary judgment, the defendant-movant must demonstrate that, even viewing the evidence in the light most favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (internal quotation marks and citation omitted); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (citation omitted). The movant may satisfy its initial burden by either showing that the nonmoving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial," *G and G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022) (internal quotation marks and citation omitted), or alternatively, by "producing affirmative evidence negating an essential element of the nonmoving party's claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000). However, "[a] moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105 (citation omitted).

On the other hand, when the plaintiff-movant "will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird v. BNSF Railway Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quotation marks and citation omitted); *see also C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.") (quotation marks and citation omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine fact on each issue material to its case." *C.A.R. Transp.*, 213 F.3d at 480 (citation omitted). "The moving party need not disprove the other party's case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted).

If the movant satisfies its burden, the burden then shifts to the non-moving party to "designate specific facts demonstrating the existence of genuine issues for trial." *Oracle Corp.*, 627 F.3d at 387 (citation omitted). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence" and more than "some metaphysical doubt as to the material facts at issue." *Id.* (internal quotation marks and citation omitted). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citation omitted); *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024) ("[T]here must be evidence on which the jury could reasonably find for the plaintiff. . . . The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."). In other words, "the nonmoving party may not rest upon mere allegations or denials of his pleading[.]" *Zellmer*, 104 F.4th at 1122 (internal quotation marks and citation omitted). Nor will the Court "scour the record in search of a genuine issue of triable fact. [The Court] rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted); *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 737 (E.D. Cal. 2022) ("The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.").

Finally, when evaluating a motion for summary judgment, the Court does "not engage in credibility determinations or weigh evidence; rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Munden v. Stewart Title Guaranty Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021) (cleaned up) (internal quotation marks and citation omitted); *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) ("[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence, as those are functions reserved for the jury.") (cleaned up) (internal quotation marks and citation omitted).

IV. Discussion

A. Defendant's Evidentiary Objections (Dkt. # 328-2)

At the outset, Defendant raises ten (10) evidentiary objections to Plaintiff's declaration. *See Evid. Objs.* at 1–2. Defendant objects that Plaintiff's declaration improperly "characterizes" several pieces of evidence she relies on in support of her motion. *See, e.g.*, *id.* at 1 ("Plaintiff characterizes the legal effect of the Bailey Quitclaim and the appearance releases.") ("Defendant objects only to Plaintiff's testimony characterizing the legal effect of the parties' agreement."). Defendant further objects that much of Plaintiff's testimony is speculative and that Plaintiff lacks personal knowledge to offer such testimony. *See, e.g.*, *id.* at 1 ("Plaintiff speculates regarding Defendant's understanding of the contents of the media drives."), 2 ("Plaintiff lacks personal knowledge to testify regarding Defendant's awareness, understanding, or subjective beliefs.") (objection for "[s]peculation regarding Defendant's intent."). None of these objections have merit.

"Objections to evidence on the ground that it is irrelevant, speculative, and/or argument or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself and unnecessary to consider here." *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 807–08 (C.D. Cal. 2022) (cleaned up) (quotation marks and citations omitted). "Accordingly, the Court does not consider any objections that the evidence is . . . speculative . . . or that there is a lack of personal knowledge." *Id.* at 808 (quotation marks and citation omitted). "Similarly, the Court will not consider [Defendant's] objections to the characterization of or purported misstatement of the evidence presented." *Id.* (quotation marks and citation omitted); *see also Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 1000 (S.D. Cal. 2025) ("[O]bjections to the characterization, weight, or credibility of the evidence, such as that Eglin 'misstates facts' or that his statement is 'vague and ambiguous' are not proper evidentiary objections to evidence put forth at summary judgment.") (cleaned up) (citation omitted); *Badami v. Christiansen*, No.

8:22-cv-01918-FWS-KES, 2023 WL 7107258, at *2 (C.D. Cal. Sept. 20, 2023) ("[O]bjections regarding the characterization our purported misstatement of the evidence are not cognizable evidentiary objections."). Accordingly, the Court **OVERRULES** Defendant's evidentiary objections (Dkt. # 328-2).

B. Plaintiff's Copyright Claim

Plaintiff first requests partial summary judgment in favor of her second cause of action for Direct Copyright Infringement—and Reproduction (Count II).[2] *See TAC* at 16–18; *MSJ* at 10–24. To prevail on her copyright infringement claims, Plaintiff must show that she (1) owns a valid copyright in the Film; and (2) that Defendants copied protected aspects of her work. *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940 (9th Cir. 2023) (citation omitted).

*i. Copyright Ownership*

Title 17 U.S.C. § 410 prescribes that "[i]n any judicial proceedings[,] the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Enter. Mgmt. Ltd. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056–57 (9th Cir. 2023). Plaintiff preliminarily maintains that there is no genuine dispute of material fact that Plaintiff owns the copyright in the Film. *See MSJ* at 10–24.

Previously, the Court judicially noticed that Plaintiff is the owner of the certificate of copyright registration in registration number PAU004219986. Dkt. # 262 at 4; *see also Chandler Decl.* ¶ 2 ("I hold U.S. Copyright Registration No. PAU004219986 for Quest for

[2] Plaintiff originally also sought summary judgment on her first cause of action for Direct Copyright Infringement–Public Performance. However, in her Reply brief, Plaintiff appears to acknowledge there is a genuine dispute as to a material fact for this claim. *See Reply* at 10 ("[T]he only issue remaining for trial on the First Cause of Action is the narrow factual question of whether Defendant personally participated in uploading or publicly displaying the Film, as distinct from Skipper having acted alone."). As Plaintiff's motion fails to distinguish between her two theories of reproduction and public performance, and because Plaintiff now agrees that her first claim bears an issue for trial, the Court considers Plaintiff's initial request for summary judgment on this claim as withdrawn.

Youth, . . ."); Ex. D to *MSJ*, Dkt. # 324-1 at 112 (copy of Plaintiff's U.S. Copyright Registration for Quest for Youth). Plaintiff also submits the parties' January 5, 2023 "Fountain of Youth Agreement," which is defined as a "work for hire agreement . . . between April Chandler, Mephobia Media (the 'Recipient') . . . and Michael Maloy, Empirical Media (the 'Contractor')" ("Work-for-Hire Agreement"). Ex. D to *MSJ*, Dkt. # 324-1 ("*Work for Hire Agreement*") at 9. As the Court previously explained, if a work is "specially ordered or commissioned for use . . . as part of a motion picture or other audiovisual work," and "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire," then the "employer or other person for whom the work was prepared is considered the author" and unless expressly agreed otherwise, "owns all of the rights comprised in the copyright." 17 U.S.C. §§ 101, 201(b); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010). As the commissioner of the Film, the copyright therefore "lies *ab initio*" with Plaintiff. *Twentieth Century Fox Film Corp. v. Ent. Distrib.*, 429 F.3d 869, 881 (9th Cir. 2005). Finally, Plaintiff submits a copy of the Quitclaim Agreement ("Quitclaim") executed between herself and Fraser Bailey, assigning all "right, title and interest in and to 'The Film'" to Plaintiff. *See* Ex. D to *MSJ*, Dkt. # 324-1 at 117.

Defendant must therefore rebut Plaintiff's presumption of validity. Defendant has not met his burden to do so. In his Opposition brief, Defendant argues, in relevant part:

> Plaintiff asks the Court to conclude that the alleged Work-Made-for-Hire Agreement, the subsequent Quitclaim, the appearance releases, and related documents collectively establish an uninterrupted chain of exclusive copyright ownership. Defendant disputes both the legal significance of those documents and whether they convey the exclusive rights Plaintiff now claims. Those are not merely semantic disagreements. They concern the interpretation and legal effect of the very documents upon which Plaintiff's Motion depends. Summary judgment is not appropriate where the dispositive issue turns upon competing interpretations of contractual documents whose legal consequences remain contested.

*Opp'n* at 9.

Though Defendant "disputes" the legal significance of Plaintiff's proffered documents, he has come forth with no evidence or authority to place these documents sufficiently in dispute. A "bald assertion" that a genuine dispute of material fact exists is insufficient to defeat summary judgment. *Harper*, 877 F.2d at 731. Throughout his Opposition brief, Defendant repeatedly argues that the Quitclaim and the Work-for-Hire Agreement turn on competing interpretations of the contracts. *See, e.g.*, *Opp'n* at 1 (stating that Plaintiff "asks the Court to resolve competing interpretations of contracts, . . ."), 4 (noting that Plaintiff offers "competing interpretations of disputed documents"), 5 (arguing that "competing interpretations of that evidence ordinarily present questions for trial . . .").

These arguments miss the mark for two reasons. First, Defendant's Opposition brief fails to offer *any* competing clause, provision, term, etc. in any of Plaintiff's agreements. Defendant cursorily mentions a competing legal interpretation exists but fails to cite any actual competing provisions of terms. Moreover, "[c]ontract interpretation, as a question of law, is often amenable to summary judgment, . . . although summary judgment may be inappropriate in a contract case if there is a dispute over a material fact necessary to interpret the contract." *Essex Walnut Owner L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146, 1150 (N.D. Cal. 2018) (internal citation and quotation marks omitted) (cleaned up); *see also JAE Props., Inc. v. AMTAX Holdings 2001-XX, LLC*, 716 F. Supp. 3d 918, 937 (S.D. Cal. 2024) ("Interpretation of a contract is a question of law."). Had Defendant offered a competing interpretation of any of the contracts, the Court could have construed the agreements' terms. But Defendant failed to do so.

a. Plaintiff's Response to Interrogatory No. 11

In any event, Defendant represents that "[he] does not deny that the parties entered into an agreement preceding the production of the documentary. Nor does Defendant dispute that Plaintiff engaged his company to provide production services for the project." *Opp'n* at 9. Instead, Defendant only disputes that in response to Defendant's Interrogatory No. 11, which asked Plaintiff to identify all documents and communications relating to the "creation, execution, or transmission" of the parties' Work-for-Hire Agreement, Plaintiff responded, in pertinent part:

> The work-made-for-hire agreement was executed by the parties. The signed Work-Made-for-Hire Agreement was sent to Defendant in the mail by USPS and Defendant returned an executed copy in person to Plaintiff on March 22, 2023, in the presence of Thomas Harrison in Los Angeles. . . .

Ex. 33 to *Opp'n*, Dkt. # 328-4 at 10–11.

Defendant thus questions the authenticity of Plaintiff's submitted Work-for-Hire Agreement because her copy "bears an execution date of January 23, 2023," as opposed to March 22, 2023, and because she could not identify any "contemporaneous email or metadata documenting its transmission." *Opp'n* at 10. Both arguments lack merit.

First, the submitted copy of the Agreement shows that both parties signed the document on January 23, 2023. *See Work for Hire Agreement* at 116. It is plausible that Defendant signed the Agreement and waited over one month before returning the signed copy in the mail to Plaintiff. Furthermore, though "unauthenticated documents cannot be considered in a motion for summary judgment, . . . [t]he authentication of a document requires evidence sufficient to support a finding that the matter in question is what its proponent claims." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011) (internal quotation marks and citation omitted). One way to authenticate a document is to have the proponent testify "that an item is what it is claimed to be." Fed. R. Evid. 901(b). Here, Plaintiff submitted a declaration, wherein she attests under penalty of perjury that the attached Work-for-Hire Agreement "is a true and correct copy of the agreement Defendant countersigned as part of our January 2023 engagement." *See Chandler Decl.* ¶ 7. As a party to the contract, Plaintiff has personal knowledge of its formation and contents. *See id.* ¶ 5; *see also Chandler Reply Decl.* ¶ 11. Plaintiff has therefore sufficiently authenticated her copy of the Agreement for purposes of summary judgment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *Bridget M. v. Kijakazi*, No. EDCV 19-1497-KK, 2022 WL 18142562, at *1–2 (C.D. Cal. Sept. 12, 2022); *Prime Ins. Syndicate, Inc. v. Damaso*, 471 F. Supp. 2d 1087, 1093 (D. Nev. 2007).

b. Chain of Title

Title 17 U.S.C. § 201(d) provides that "[t]he ownership of a copyright may be transferred in whole or in party by any means of conveyance or by operation of law[.]" 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

U.S.C. § 201(d)(1). The Copyright Act establishes that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).

The Ninth Circuit has held that "no magic words must be included in the document to satisfy § 204(a)," but "[r]ather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television Espanola S.A. v. New World Ent. Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (citations omitted). "The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." *Id.*; *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("[A] one-line pro forma statement will do."); *see also Deal v. Henry*, No. 2:25-cv-05872-AB-E, 2026 WL 2127169, at *4 (C.D. Cal. June 30, 2026).

To support that chain of title is complete, Plaintiff cites: a copy of her federal copyright registration, Ex. D to *MSJ*, Dkt. # 324-1 ("*Copyright Registration*") at 112; the parties' Work-for-Hire Agreement; her Quitclaim Agreement with Fraser Bailey ("Mr. Bailey"), *id.* at 117; several copies of Release Forms executed by cast members in the Film, *see id.* at 121–26; and a copy of Plaintiff's Distribution Agreement with Big Media Holdings, LLC, wherein Plaintiff warrants exclusive copyright to the Film, *see id.* at 136–41 ("*Distribution Agreement*"). Defendant responds that (i) the Quitclaim Agreement recites that Plaintiff jointly produced the Film with Mr. Bailey; (ii) Plaintiff's email in a separate action states that Plaintiff obtained the underlying footage and rights from Leonardo Michael; (iii) Mark Skipper's declaration states that Plaintiff was introduced to the film years after filming was completed; and (iv) that Plaintiff's discovery responses admitted that she lacks knowledge as to how Mark Skipper obtained the footage. *See Opp'n* at 12.

None of these arguments bear on whether Plaintiff transferred title to the copyright. To begin, Mark Skipper's declaration is not before the Court.[3] Though the Quitclaim Agreement mentions that Plaintiff and Bailey co-produced the Film, the Agreement

[3] To the extent that Defendant submitted this declaration with his Opposition brief, he fails to specifically cite to where it is located in the Record. The Court will not scour the Record to locate this declaration. C.D. Cal. L.R. 56-4; *Keenan*, 91 F.3d at 1279; *Perez*, 591 F. Supp. 3d at 737.

provides that Bailey expressly assigned to Plaintiff "full title guarantee all of their right, title and interest in and to 'The Film.'" Ex. D to *MSJ*, Dkt. # 324-1 at 117. Defendant's remaining evidence is immaterial. Plaintiff holds the copyright registration to the Film and commissioned Defendant as a Contractor. *See Copyright Registration*; *Work for Hire Agreement*. Defendant has failed to point to any signed writing wherein Plaintiff transferred her rights to either himself or a third party. *Radio Television*, 183 F.3d at 927; *Effects Assocs.*, 908 F.2d at 557; *Deal*, 2026 WL 2127169, at *4. The Court is therefore satisfied that on this record, Plaintiff has not transferred copyright ownership of the Film.

*ii. Direct Infringement: Copying Protectable Aspects*

Plaintiff must next show that Defendant copies protected aspects of her work. *Hanagami*, 85 F.4th at 940; *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). "When the issue is whether two works are substantially similar, summary judgment is appropriate if no reasonable juror could find substantial similarity of ideas and expression." *Funky Films*, 462 F.3d at 1076 (quotation marks and citation omitted). Generally, summary judgment "is not highly favored on the substantial similarity issue in copyright cases[.]" *Id.* The substantial similarity test contains both an "extrinsic and intrinsic component." *Id.* at 1077. "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between the two works, is exclusively the province of the jury." *Id.* (citation omitted). "A plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Id.* (quotation marks and citation omitted).

The extrinsic analysis is "objective in nature": it depends on "specific criteria which can be listed and analyzed," such as "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Id.* When applying this test, the Court compares "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* For example, "generic plot-lines[] are not protectable," and when conducting this test, the Court must "filter out and disregard the non-protectable elements" in making this determination. *See, e.g.*, *id.* (comparing two films' plot, characters, themes, setting, mood, pace, dialogue, and sequence of events); *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1168–1177 (N.D. Cal.

2014) (comparing the same criteria in two screenplays); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1103 (C.D. Cal. 2005).

In her moving papers, Plaintiff first cites to Exhibit I, containing Defendant's written discovery responses to Plaintiff's First Set of Discovery Requests and Requests for Admission ("RFAs"), propounded on June 24, 2026. *See* Ex. I to *MSJ*, Dkt. # 324-2 ("*Pl.'s RFAs*") at 27–33. Plaintiff relies on these responses, in part, to support the fact that Defendant admitted to infringement. *MSJ* at 22. Throughout his responses, however, Defendant objected to Plaintiff's RFAs as untimely. *See Pl.'s RFAs*; Fed. R. Civ. P. 36(a)(5). The Court cannot deem these requests as admitted.

Plaintiff next relies on Exhibit F to her motion, which is a demonstrative "side-by-side comparison" of the two films at issue in this case. *See MSJ* at 23; *see also* Ex. F to *MSJ*, Dkt. # 324-1 at 71–78; Dkt. # 324-2 at 1–4; *Chandler Decl.* ¶ 20 ("I have prepared, and attach as Exhibit F, pp.2-13, a side-by-side comparison of my predecessor cut ('Fountain of Youth') and the cut Defendant edited ('Quest for Youth'), addressing the film poster, the Film's B-roll footage, the on-screen director/producer credit, and the corresponding cast interview segments common to both cuts."). Generally, demonstrative exhibits "do not constitute evidence" for purposes of summary judgment. *Zhou v. Wang's Rest.*, No. C 05-0279 PVT, 2007 WL 134441, at *3 (N.D. Cal. Jan. 16, 2007). Notwithstanding that Plaintiff submitted a demonstrative, Plaintiff failed to submit the accused film as part of the record. *Stewart*, 574 F. Supp. 2d at 1103 ("Here, the court need not—indeed cannot—engage in a side-by-side comparison of the protected and accused works, since neither party has proffered the accused films as part of the record on the pending summary judgment motions."). Thus, the Court cannot compare the content of both films' plot, characters, themes, dialogue, mood, setting, pace, sequence, etc. *Funky Films*, 462 F.3d at 1077. Plaintiff has not filtered out the protectable and non-protectable aspects of each work. *See id.* The Court therefore **DENIES** Plaintiff's motion on this basis.

C. Conversion

The TAC's sixth cause of action brings one claim for conversion, alleging that Defendants unlawfully retained possession of Plaintiff's raw footage and drives, which Plaintiff owns exclusively. *See TAC* ¶ 129. Plaintiff requests summary judgment on this claim. *MSJ* at 24–25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

"Under California law, conversion is generally described as the wrongful exercise of dominion over the personal property of another." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010). In California, "the elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act of disposition of property rights; and (3) damages[.]" *United Studio of Def., Inc. v. Rinehart*, No. SA CV 18-1048-DOC (DFMx), 2019 WL 6973520, at *4 (C.D. Cal. Sept. 9, 2019); *In Re Hoag Urgent Care-Tustin, Inc.*, No. SACV 19-2485 MWF, 2021 WL 1164285, at * 3 (C.D. Cal. Mar. 26, 2021). "Because the act must be knowingly done, neither negligence, active or passive, nor a breach of contract, even though it results in injury to, or loss of, specific property, constitutes a conversion." *Hoag Urgent Care*, 2021 WL 1164285, at * 3 (cleaned up) (citation and quotation marks omitted).

Plaintiff has submitted sufficient evidence to support her claim for conversion. In August 2023, Plaintiff "shipped four LaCie Rugged hard drives (the 'MEDIA DRIVES') containing all raw A-roll and B-roll footage for Quest for Youth to Defendant Michael Maloy" at his Venice, California address. *Chandler Decl.* ¶ 10. Defendant sent Plaintiff a photograph of all four drives confirming his receipt on August 19, 2023. *Id.* ¶ 11; *see also* Ex. A to *MSJ*, Dkt. # 324 at 47. Plaintiff attests that she "provided the drives solely for editing services under [the parties'] work-for-hire agreement" and "retained ownership of the drives, all raw footage, and any first cut or editable version of the Film at all times." *Chandler Decl.* ¶ 10. On August 21, 2023, Defendant texted Plaintiff that he would return her media drives. *Id.* ¶ 13; Ex. A to *MSJ*, Dkt. # 324 at 48. Defendant never returned the media drives. *Chandler Decl.* ¶¶ 13, 23 ("He did not return the drives or First Cut despite terminating the engagement."), 24.

On January 17, 2024, Plaintiff sent Defendant a cease-and-desist email, demanding return of the media drives and all raw footage. *Chandler Decl.* ¶ 34; *see also* Ex. B to *MSJ*, Dkt. # 324 at 88. Defendant continues to retain Plaintiff's media drives, raw footage copies, and the first cut in editable format, despite repeated demands for their return. *Chandler Decl.* ¶ 35. Defendant has never produced "any chain of title documentation, video releases from cast members, written assignment of rights, copyright transfer, or any document" reflecting that Plaintiff conveyed the rights to the Film to him. *Id.* ¶ 36. Without the media drives, Plaintiff "cannot complete the Film without restarting the editing process from the beginning" and cannot realize a profit from the Film. *Id.* ¶¶ 34, 37.

Plaintiff has therefore adduced evidence to demonstrate that she owned the rights to the media drives, and that Defendant, without her consent, wrongfully dispossessed her of this property, which resulted in damages to Plaintiff. *United Studio of Self Def.*, 2019 WL 6973520, at *4. Defendant responds that there is a genuine dispute of material fact because, over text message, Plaintiff's "contemporaneous communications refer to the drives being prepared for Defendant as backup drives and state that the materials were also backed up on her Google Drive." *Opp'n* at 17. In support, Defendant cites to Exhibit 31, which show screenshots of an unidentifiable text exchange. *See* Ex. 31 to *Opp'n*, Dkt. # 328-4 at 5. But Defendant has not properly authenticated this text exchange, and even if he did, this does not affect the analysis—Defendant does not deny that he failed to return the hard copy media drives back to Plaintiff. Though Defendant frames this as "continued possession following an authorized and voluntary delivery," *Opp'n* at 17, he ignores the fact that he continues to possess the drives after Plaintiff demanded their return. *See Hoag Urgent Care*, 2021 WL 1164285, at *4 ("An element of the tort of conversion requires a plaintiff to prove that the defendant substantially interfered with the plaintiff's property by knowingly or intentionally . . . refusing to return the property after the plaintiff demanded its return.") (emphasis omitted) (citation omitted).

Defendant next opposes summary judgment because Plaintiff has not demonstrated the media drives' value "or the damages allegedly resulting from its retention." *Opp'n* at 18. But Plaintiff's motion does not request damages at this juncture. *See MSJ* at 29, ¶ 3 (requesting the Court "order Defendant to return all MEDIA DRIVES, all raw footage copies, and the first cut in editable format within seven (7) days of the Court's Order."); *Bean v. Pearson Educ., Inc.*, 949 F. Supp. 2d 941, 950 (D. Ariz. 2013) ("Plaintiffs respond that damages calculation are irrelevant to their motion because they seek partial summary judgment on the issue of liability alone. . . . The Court agrees."). This argument is unavailing. Accordingly, the Court **GRANTS** Plaintiff's motion on this basis. Because Plaintiff has shown success on the merits on this Record, the Court further **ORDERS** Defendant to return the media drives to Plaintiff within fourteen (14) days of this Order. *California v. Ejuicesteals.com*, No. 1:23-cv-01726-KES-CDB, 2026 WL 1021061, at *11–12 (E.D. Cal. Apr. 15, 2026).

D. Defendant's Counterclaims

Defendant has alleged three counterclaims against Plaintiff for (1) breach of contract; (2) unjust enrichment; and (3) declaratory judgment. *Answer* at 17–18. Plaintiff requests summary judgment on all three counterclaims.

*i. Breach of Contract*

First, Defendant counterclaims against Plaintiff for breaching the parties' Work-for-Hire Agreement because Plaintiff "agreed to pay Defendant $75,000 in milestone payments – 50% upon execution of agreement, 25% upon approved final edit, and 25% upon delivery," yet Plaintiff failed to tender any payments under the Agreement. *Id.* at 18. Plaintiff argues that she was excused from performance because Defendant first breached the Agreement and indeed severed all ties with her in a December 15, 2023 letter. *See MSJ* at 25–27.

The parties' Agreement defined Plaintiff as the "Producer" and Defendant as the "Editor." *Work for Hire Agreement* at 1. The Agreement stated that beginning on January 5, 2023, "Editor" agreed to "create a revised version of the existing documentary film Fountain of Youth," and further, agreed to "manage all aspects of the editing for the documentary, including graphics, music, voice-over mix and color correction." *Id.* In exchange, Plaintiff-"Recipient" agreed to pay Defendant compensation "not to exceed $75,000" in installments "as the Contractor [Defendant] **achieves milestones, as agreed between Producer and Editor,** with a final lump sum upon Final Cut and completion of the Services." *Id.* (emphasis added).

On August 27, 2023, Defendant sent Plaintiff a project update, and promised a "first cut" of the Film "by the end of September[.]" *Chandler Decl.* ¶ 14. Plaintiff affirms that "Defendant's first cut was ultimately delivered only as a non-editable review copy" produced under password protection, and posted to Vimeo with a "time-coded watermark." *See id.* ¶¶ 14–15. Defendant never completed a final cut of the Film. *Id.* ¶ 15. On December 15, 2023, Defendant sent a letter to Tom Harrison "seek[ing] to sever all ties with April Chandler and the documentary project currently titled 'Quest for Youth,'" stating that Plaintiff breached the parties' Agreement by not paying him according to the Agreement's milestones. *See* Ex. 26, Dkt. # 303 at 49.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

"A claim for breach of contract exists when there is (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 941 (C.D. Cal. 2015). "[W]hen one party fails to perform a dependent obligation, the other party is excused from performing its own obligations under the contract." *Wire Cut Co. v. Thomas*, No. 8:23-cv-01535-JVS-ADS, 2024 WL 3086680, at *3 (C.D. Cal. Apr. 17, 2024). "It is also true, however, that when a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Id.* "California abides by the rule that whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact." *Id.*; *see also CP Howe & Arden LLC v. Starbucks Corp.*, No. 2:25-cv-02637-JAM-JDP, 2026 WL 604554, at *2 (E.D. Cal. Mar. 4, 2026) ("[N]ormally the question of whether a breach of an obligation is a material breach, so as to excuse its performance by the other party, is a question of fact.") (collecting cases).

In his Opposition brief, Defendant suggests that "[n]othing in [the] agreement supports Plaintiff's assertion that delivery of a password-protected copy, rather than an editable master file, constituted nonperformance." *Opp'n* at 18. In other words, Defendant proffers that he performed at least part of his obligations owed under the agreement. Here, the issue is one of contract interpretation. The parties agreed that Plaintiff would pay Defendant in installments "as the Contractor [Defendant] achieves milestones, as agreed between Producer and Editor[.]" *Work for Hire Agreement* at 1. Though it is true that "[w]hen interpreting a contract's invalidity, leaving an unresolved term for future agreement is not invariably fatal," Plaintiff has failed to adduce any evidence that the parties agreed to *which* "milestones" Defendant would need to achieve before Plaintiff would render payment. *Johnson v. Mittman*, No. 8:21-cv-01664-DOC-JDE, 2025 WL 2995147, at *5 (C.D. Cal. Sept. 10, 2025). As the movant, Plaintiff was obligated to proffer evidence that she was excused from performing under the Agreement because Defendant failed to achieve such "milestones." Plaintiff was also obligated to demonstrate that the parties separately agreed to the definition of such milestones and incorporated this into their Work-for-Hire Agreement. Instead, at this juncture, there is at least a genuine dispute as to whether Defendant at least partially satisfied his obligations under the contract such that Plaintiff owed him a payment installment. On this record, the Court therefore **DENIES** Plaintiff's motion for this counterclaim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

*ii. Unjust Enrichment*

Defendant next counterclaims for unjust enrichment, alleging that "[i]n the alternative, if the Agreement is found unenforceable, [Counter-]Plaintiff has been unjustly enriched" because Plaintiff "wrongfully retained the benefit of Defendant's services without compensation." *Answer* at 18.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution," which the Court does so here. *Id.* Quasi-contract describes a theory "that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Id.*; *Krantz v. Old Copper Co.*, 794 F. Supp. 3d 724, 745–46 (C.D. Cal. 2025). "It is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject." *Krantz*, 794 F. Supp. 3d at 746. Here, the parties have executed a written agreement on the very subject underlying Defendant's counterclaim. Neither party has challenged the validity or enforceability of the agreement. The Court therefore **GRANTS** summary judgment to Plaintiff on this theory.

*iii. Declaratory Judgment*

Finally, Defendant counterclaims for a declaratory judgment that his work was not a work made for hire, that Defendant owns the protectable elements he independently created, and that Plaintiff does not hold exclusive rights to those elements. *Answer* at 18. The Court has found *supra* that Plaintiff is the exclusive copyright owner to the rights of the Film and that pursuant to the parties' Agreement, Plaintiff commissioned Defendant's labor on a work-for-hire basis. Accordingly, the Court **GRANTS** Plaintiff's motion on this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-08210-MWC-PVC Date: September 2, 2026

Title: April Chandler v. Mark Skipper, *et al.*

V. Conclusion

For the foregoing reasons, it is **ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. # 324) is **GRANTED IN PART AND DENIED IN PART**.

2. Defendant's Evidentiary Objections (Dkt. # 328-2) are **OVERRULED**.

3. Defendant is **ORDERED** to deliver Plaintiff's media drives within fourteen (14) days of this Order.

4. The September 4, 2026 hearing is **VACATED**.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ