April Chandler
Pro Se Plaintiff
april@aprilchandler.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APRIL CHANDLER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MALOY,<br><br>Defendant. | Case No. 2:25-cv-08210-MWC-PVC<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (L.R. 16-4)**<br><br>Final Pretrial Conference: December 18, 2026, 1:30 p.m.<br>Courtroom 6A<br>Trial: December 28, 2026<br>Hon. Michelle Williams Court |

Plaintiff April Chandler submits this Memorandum of Contentions of Fact and Law under Local Rule 16-4 and the Court's Civil Trial Order. Plaintiff reserves the right to supplement it on receipt of the materials and declaration ordered in Dkt. 386 (footage due November 30, 2026; declaration due December 1, 2026).

## I. MATTERS ALREADY DECIDED

The Court has ruled on the following, and they are not for trial:

1. **Ownership.** "Plaintiff holds the copyright registration to the Film and commissioned Defendant as a Contractor . . . . The Court is therefore satisfied that on this record, Plaintiff has not transferred copyright ownership of the Film." Dkt. 340 at 14.

2. **Exclusive ownership and work for hire.** "The Court has found supra that Plaintiff is the exclusive copyright owner to the rights of the Film and that pursuant to the

parties' Agreement, Plaintiff commissioned Defendant's labor on a work-for-hire basis." Dkt. 340 at 20 (granting Plaintiff's motion on Defendant's declaratory-judgment counterclaim). See also id. at 10, 12; Dkt. 321 at 12-17.

3. **Defendant's own description.** At the November 13, 2026 hearing Defendant described the project as one "I had been commissioned, or whatever you want to call it, to complete." Dkt. 384 at 10 (quoting hearing statement). Defendant has also described the work as commissioned in his filings (Dkt. 301 at 13-14; Dkt. 233; Dkt. 127; Dkt. 103-1 at 4-5) (Ex. 65).

4. **Conversion of the raw footage.** "Plaintiff's raw footage is included as part of the Court's conversion ruling. The Court GRANTS Plaintiff's motion on this basis and ORDERS Defendant to return all such raw footage back to Plaintiff." Dkt. 384 at 10. The Court held that the editable first cut, which was not delivered in a tangible form, "falls exclusively under Plaintiff's copyright claim." Id.

5. **Defendant's unjust-enrichment and declaratory-judgment counterclaims** were resolved in Plaintiff's favor. Dkt. 340 at 20. The Court denied summary judgment on the breach-of-contract counterclaim because the parties' milestones were in dispute. Dkt. 340 at 18-19.

## II. CLAIMS AND ISSUES FOR TRIAL

### A. Copyright infringement against Defendant Maloy (17 U.S.C. §§ 106(2), 501)

**Elements.** Plaintiff must prove (1) ownership of a valid copyright and (2) copying of protected expression. Skidmore v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020) (en

banc); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Element (1) is decided (Part I).

**Facts and evidence on copying.** Defendant received the four LaCie drives holding Plaintiff's raw footage and the project (Exs. 45, 46); he consolidated the media (Ex. 46); he cut and distributed versions of the Film, including a YouTube version, from Plaintiff's footage and from the predecessor cut (Exs. 50-53). Plaintiff will offer the accused cuts and the predecessor cut themselves (Exs. 51, 52), together with her testimony and Defendant's own testimony and exhibits identifying the proportion of Plaintiff's footage in his version (his Ex. 9). Derivative-work rights belong to the owner. 17 U.S.C. § 106(2). On summary judgment the Court found "at least a genuine dispute as to whether Defendant Maloy participated in uploading the Film to YouTube prior to its takedown," that the evidence "suggests that Maloy and Skipper 'reached an agreement to proceed with their own version of Quest For Youth using [Plaintiff's] copyrighted footage and materials,'" and that Plaintiff "has therefore produced evidence to show copying of the Film." Dkt. 321 at 18. These are questions for the jury. The evidence includes Mark Skipper's January 25, 2024 submission to Big Media, which links the video he called "the trailer that my team had created" and says he had been "in close contact with Michael Maloy who created the edit for Quest For Youth" (Dkt. 324 at 82; Ex. 60), and Plaintiff's removal of that video from YouTube for infringement (Dkt. 324-1 at 27). Defendant has admitted that he copied portions of Plaintiff's footage onto a separate working drive: he told the Court at the November 13, 2026 hearing that he took "what [he] need[ed] from the drives and used them on a separate drive to create the new film" (Dkt. 384 at 11), and his Dkt. 385 repeats that he "copied selected portions of Plaintiff's

original footage onto a separate working drive." The Film contains at least 90% of Plaintiff's raw footage (Chandler MSJ Decl. ¶ 6), and Defendant's version credits her as director (Exhibit F).

**B. Secondary liability**

Plaintiff contends that Defendant is liable for inducing, contributing to and profiting from infringement by others. Inducement requires distribution of a work with the object of promoting infringement, shown by clear expression or affirmative steps. MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936-37 (2005). Contributory infringement requires knowledge and material contribution; vicarious infringement requires the right and ability to supervise and a direct financial interest. Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169-73 (9th Cir. 2007). Mark Skipper was dismissed from this action on service grounds under the Hague Convention without prejudice, so he is not a party to this trial, but his acts are the direct infringement on which these theories rest. Counts I-V remain against Defendant Maloy after Dkt. 340. Plaintiff contends that Defendant gave Mr. Skipper the contact details for Big Media and that he and Mr. Skipper acted together (see Part II.A). Evidence: Exs. 50-53 and the YouTube posting and "legal owner" notice (Dkt. 122, Ex. 14 at 58-60); Defendant's supply of the cuts and footage; Defendant's and Mark Skipper's contacts with Big Media (Dkt. 122, Exs. 2, 6).

**C. Remedies**

**1. Statutory damages for willful infringement.** Plaintiff elects statutory damages under 17 U.S.C. § 504(c) for Defendant’s infringement of the Film, one work, and asks the jury to find the infringement willful and to award up to $150,000. Statutory damages require

no proof of loss or profits, and the amount is for the jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998). Plaintiff's registration (PAU004219986) has an effective date of February 8, 2024 (Ex. 44; Dkt. 340 at 5). Statutory damages are available for Defendant's own infringing acts that began after that date. 17 U.S.C. § 412; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700-01 (9th Cir. 2008). Defendant confirmed to the Court on November 13, 2026 that he copied Plaintiff's raw footage onto a separate drive and used it to create a new film (Dkt. 384 at 11), and his notice repeats that he copied selected portions onto a working drive (Dkt. 385). He continues to hold and use those copies. His infringing acts therefore continued after the February 8, 2024 effective date, including after Plaintiff's January 17, 2024 cease-and-desist demand (Ex. 49) and after the Court ruled on ownership and conversion (Dkt. 340 at 14, 17, 20; Dkt. 384 at 10). Plaintiff did not learn of Defendant's infringement until she registered the Film on February 8, 2024 (Chandler MSJ Decl. ¶ 38). Defendant's contention that the infringement began earlier (Dkt. 381 at 5-6) is argument, not evidence, and identifies no infringing act by Defendant himself before the effective date. In the alternative, if the Court finds § 412 limits statutory damages, Plaintiff seeks her actual damages and Defendant's profits (Part II.C.3) and her conversion damages (Part II.C.4), and she does not waive those remedies by electing statutory damages.

**2. Willfulness.** Plaintiff will prove that Defendant acted with knowledge, or reckless disregard, that his conduct infringed: (a) Fraser Bailey assigned Plaintiff all rights in the Film by quitclaim (Dkt. 324-1 at 117), and Mr. Bailey told Defendant directly on January 10-11, 2024, "My understanding is April Chandler owns the film. Definitely not Skip." (Chandler

MSJ Decl. ¶ 32; Dkt. 324 at 95-96; Ex. 63); (b) he applied to register a competing copyright claim on January 14, 2024, three days after receiving Mr. Bailey's direct confirmation that Plaintiff, not Mr. Skipper, owned the Film (Chandler MSJ Decl. ¶¶ 32, 42; Dkt. 340 at 5; Ex. 59), and after he had already received the Quitclaim through Mr. Harrison (Dkt. 324 at 72; Ex. 74); (c) he kept Plaintiff's footage for more than three years, told her in August 2023 that he had consolidated it and could return it (Ex. 46), and conditioned the return of the drives on a $75,000 payment and a waiver of his rights (Ex. 47); (d) the drives he finally returned were empty (Ex. 54; Dkt. 364-1 ¶ 8), and he now says he holds only part of the footage (Dkt. 385); (e) he never delivered the first cut in an editable form (Dkt. 340 at 18; Dkt. 384 at 10), which bears on his knowledge and on the harm; and (f) on January 17, 2024 he told Big Media "I am the author of the film and hold substantial rights" (Dkt. 324 at 92; Ex. 61), and when Plaintiff demanded the return of her drives that day he answered, "I will happily see you in court" (Chandler MSJ Decl. ¶ 34; Dkt. 324 at 88; Ex. 49); (g) he omitted the final paragraph of his December 15, 2023 letter, in which he claimed to be "the legal author" and demanded $75,000 to "waive all rights" and return her drives, when he filed the letter in this Court (Dkt. 303 at 49; Chandler MSJ Decl. ¶ 24; Exs. 47, 48); and (h) he has continued after the cease-and-desist notice (Ex. 49) and the Court's ownership rulings.

**3. Alternative: actual damages and profits (17 U.S.C. § 504(b)).** If the Court finds that § 412 bars statutory damages, Plaintiff seeks her actual damages and Defendant's profits attributable to the infringement, including the loss of the Big Media distribution (Dkt. 324-1; Dkt. 122, Exs. 2, 6; Ex. 62), supported by the production budget filed with Plaintiff's summary-judgment motion (Ex. 72; Dkt. 324-1 at 25, "Fountain of Youth Part 1" budget) and

her testimony, including the Big Media agreement (65% of net receipts for three years, Chandler MSJ Decl. ¶ 43) and the delay of the planned February 2024 reshoot to August 2024 because of the disruption to distribution (id. ¶ 22; Ex. 69). Plaintiff must show gross revenue; Defendant must prove deductible expenses and apportionment. 17 U.S.C. § 504(b).

**4. Conversion damages (state law).** Liability for conversion of the raw footage is decided (Dkt. 384 at 10), and the Court's earlier ruling covers the media drives (Dkt. 340 at 16-17). Damages on that claim arise under California law, are not subject to the statutory-damages range, and compensate Plaintiff for the loss. See Cal. Civ. Code § 3336. Plaintiff will ask the jury to award the amount needed to make her whole for the conversion of the raw footage: its value, measured by the replacement and production cost shown in the line-producer budget (Ex. 72; Dkt. 324-1 at 25, limited to the raw-footage line items); the time and money she spent trying to recover it, including replacement drives and shipping under Dkt. 384; and loss of use for the period of retention, from August 2023 forward, with interest. Defendant's retention of the footage for more than three years, the empty drives, and his statement in Dkt. 385 that he lacks a complete copy go to the extent of the loss and to his credibility. Plaintiff does not seek conversion damages for the first cut (Dkt. 384 at 10); the first cut is relevant to the copyright claim, the counterclaim and willfulness.

**5. Punitive damages on conversion.** Plaintiff pleaded punitive damages on the conversion claim (TAC ¶ 131; Prayer III). Under California law punitive damages require clear and convincing evidence that the defendant acted with oppression, fraud or malice. Cal. Civ. Code § 3294. Plaintiff will ask the jury to find that Defendant's retention of her footage was malicious or oppressive and to set an amount, based on the same evidence as willfulness:

his August 2023 statement that he could return the drives (Ex. 46), his retention for more than three years after demand, his demand for $75,000 before return (Ex. 47), the empty drives (Ex. 54), and his coordination with Mr. Skipper to make a competing version using her footage (Chandler MSJ Decl. ¶ 40).

**6. Interest.** Plaintiff seeks pre-judgment interest on her conversion damages and post-judgment interest (TAC Prayer VI; Cal. Civ. Code § 3336; 28 U.S.C. § 1961).

**7. Adverse inference on the missing footage.** Defendant told the Court that he has "no other complete copy" of the raw footage and holds only "selected portions" on a working drive (Dkt. 385). That conflicts with his own record: on August 21, 2023 he reported that he had "consolidated all the media on to one drive" (Ex. 46); on December 15, 2023 he offered to return Plaintiff's drives and the Avid drive containing the completion materials in exchange for $75,000 (Chandler MSJ Decl. ¶ 24); he told the Court he kept Plaintiff's materials "to preserve it for trial" (Dkt. 366-1 ¶¶ 4, 6), which shows that he understood his duty to preserve; and the four LaCie drives he returned did not hold the footage (Ex. 54; Dkt. 364-1 ¶ 8; Dkt. 384 at 11, noting discrepancies in his manifests). Either Defendant still has the complete footage and the project files, or he failed to preserve them after the duty arose. Plaintiff will ask the Court to instruct the jury that it may infer that the missing footage and project files would have been unfavorable to Defendant, including that he used more of Plaintiff's footage than he admits. See Fed. R. Civ. P. 37(e)(2); Ninth Circuit authority on adverse-inference instructions. Plaintiff reserves the right to supplement this request after Defendant's December 1, 2026 declaration and the delivery under Dkt. 384. See Plaintiff's Motion in Limine No. 4.

**8. Other relief.** Injunction and impoundment (17 U.S.C. §§ 502, 503), and costs. Plaintiff is not represented by counsel and does not presently seek attorney's fees.

## III. DEFENDANT'S COUNTERCLAIM AND PLAINTIFF'S CONTENTIONS

**Breach of contract.** Under California law the elements are a contract, the claimant's performance or excuse, breach, and resulting damages. Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). The Work Made For Hire Agreement provides compensation "not to exceed $75,000" in installments "as the Contractor achieves milestones, as agreed between Producer and Editor." Dkt. 340 at 18. The Court denied summary judgment because the parties' agreed milestones were not established. Id. at 19. Plaintiff contends:

1. **The agreed total was $50,000.** On August 27, 2023, Defendant himself proposed a revised budget of $50,000, reduced from $75,000, in his project update (Ex. 73; Dkt. 324 at 50-51 (Ex. A, pp. 20-21); Chandler MSJ Decl. ¶ 14, Dkt. 324-3; Statement of Uncontroverted Facts ¶¶ 25, 68). The $75,000 figure was a ceiling that the parties lowered, and no ownership dispute existed when he proposed it.

2. **Defendant was paid $12,500 in milestones for the first cut** (Ex. 58) and then terminated the agreement. The remaining milestone payment was due on delivery of the final cut, which never occurred.

3. **Defendant never delivered an editable cut or the project files.** The first cut was provided only as a non-editable, password-protected, watermarked review copy (Chandler MSJ Decl. ¶¶ 14-15; Dkt. 340 at 18; Ex. 57), and Defendant never completed a final cut (Dkt. 340 at 18, citing id. ¶ 15). A review copy is not delivery of the work. Defendant's own filings conflict: he says he delivered a finished film that Plaintiff accepted (Dkt. 381 at 2, 6),

yet he stated under oath that the only version of the Film he distributed was a password-protected review copy "meant solely for review purposes." Dkt. 198 ¶¶ 15, 18; see Statement of Uncontroverted Facts ¶¶ 26, 77. He never provided an editable version, and the footage ordered returned in Dkt. 384 is the footage needed to finish the Film.

4. **Payment on the final cut.** In text messages with Thomas Harrison, who was acting on Defendant's behalf, Plaintiff agreed that the first money received from distribution would go to Defendant to cover his fees from first cut to final cut, on delivery of the final cut (Ex. 74; Dkt. 324 at 72 (Ex. A, p. 42); Statement of Uncontroverted Facts ¶ 114). Delivery was a condition of that payment, and it never occurred. Defendant instead terminated, kept the $12,500, and withheld the editable version.

5. **Excuse and offset.** Defendant's termination and refusal to deliver, and his demand for $75,000 before returning Plaintiff's property (Ex. 47), excuse further performance and offset any amount claimed. Even on Defendant's best case, any unpaid balance could not exceed the amount the parties agreed, less what was paid.

Defendant bears the burden of proving the agreed milestones, his performance, and damages.

**Defenses Plaintiff expects**

1. **Ownership, authorship, work-for-hire status, chain of title.** Foreclosed. Dkt. 340 at 10-14, 20; Dkt. 321 at 12-17. See Plaintiff's Motion in Limine No. 1.

2. **Independent possession of footage and filtration.** Defendant may argue that elements came from other sources, including the predecessor cut. Plaintiff will prove the

cuts, the footage and Defendant's own proportion exhibit (his Ex. 9, not produced). See Plaintiff's Motion in Limine No. 2.

3. **License or fair use.** Defendant bears the burden. The work-for-hire agreement gave him no right to distribute or edit the Film beyond his engagement, and his December 15, 2023 letter shows he sought payment to release the drives and Plaintiff's rights. Fair use fails because the use was commercial and substitutive.

4. **Good-faith belief in ownership.** Defendant's December 15, 2023 letter calling himself the "legal author" does not show a reasonable belief after the Court's rulings, after the January 17, 2024 notice, or after Plaintiff and Mr. Bailey told him she owned the Film.

5. **Causation of the Big Media pause.** Defendant says the distributor paused for chain-of-title reasons. The contemporaneous emails show that Defendant contacted the distributor on January 17, 2024 asserting that he was "the author" (Dkt. 324 at 92); Big Media asked for chain-of-title documents on January 19 (id. at 84); Mark Skipper made his submission on January 25 (id. at 82); and Big Media paused distribution the same day because of those communications (id. at 81). The pause is not independent of Defendant's conduct.

## IV. ANTICIPATED EVIDENTIARY ISSUES

1. Relitigating ownership, authorship and chain of title (FRE 401-403) (Plaintiff's Motion in Limine No. 1).

2. Documents, summaries and demonstratives not produced or disclosed; Fed. R. Civ. P. 26(a)(3), 26(e), 37(c)(1); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d

1101, 1106 (9th Cir. 2001); FRE 1006, and undisclosed witnesses and opinion testimony, FRE 701-702 (Motion No. 2).

3. Declarations and out-of-court statements of witnesses who will not testify, including Mr. Skipper, Mr. Sim and Mr. Harrison, FRE 801-802 (Motion No. 3). Plaintiff reserves her FRE 408 objections in the Joint Exhibit List.

4. The raw footage: Defendant's attempt to limit conversion to the physical drives, which Dkts. 340 and 384 decided, and the adverse inference (Motion No. 4).

5. Unrelated litigation, other projects and personal matters, FRE 401-404 (Motion No. 5).

6. Completeness of the December 15, 2023 letter and of text threads, FRE 106.

7. Foundation for third-party documents, FRE 602, 901. Defendant's witness list (Dkt. 381-1) names only himself and Thomas Harrison.

**V. ISSUES OF LAW**

1. The limiting instruction on ownership (Dkt. 340; Motion No. 1).

2. Whether 17 U.S.C. § 412 permits statutory damages, and the amount for willful infringement under § 504(c).

3. Apportionment and deductible expenses under § 504(b), if reached.

4. The measure of conversion damages under California law, including the scope of the raw-footage items covered by Dkt. 384.

5. The effect of Defendant's non-production under Rule 37(c)(1).

6. The effect of Defendant's claim in Dkt. 385 that he has no complete copy of the footage, including any adverse inference, after his December 1, 2026 declaration.

## VI. BIFURCATION, JURY TRIAL AND ABANDONED ISSUES

**Bifurcation.** Defendant asks to bifurcate (Dkt. 381 at 11). Plaintiff opposes. Willfulness, the multi-year retention of the footage, the empty drives, and the conversion damages arise from the same facts and witnesses, and the jury needs the whole sequence to assess willfulness and the amount. Separate trials would duplicate the same testimony and the Court has set a trial of two to three days. Fed. R. Civ. P. 42(b) allows separation only for convenience, to avoid prejudice, or to expedite and economize, and none applies. Plaintiff will address it at the Final Pretrial Conference.

**Jury.** Plaintiff demanded a jury, and Defendant acknowledges the demand (Dkt. 381 at 11).

**Abandoned issues.** Plaintiff does not seek conversion damages for the first cut (Dkt. 384 at 10).

Dated: November 20, 2026

Respectfully submitted,

/s/ April Chandler
April Chandler
Plaintiff, Pro Se